[Civ. No. 121. Third Appellate District.—February 5, 1906.]

## LEWIS MOREING, Respondent, v. C. M. WEBER, et al., Appellants.

STREET IMPROVEMENT—PRIVATE CONTRACT FOR GRADING—JOINT AND SEVERAL LIABILITY—CONSTRUCTION OF CONTRACT—REFERENCE TO SPECIFICATIONS.—An agreement made by certain of the property owners whose lands abutted on a city street recited that whereas the plaintiff, as contractor, had offered to grade the street for a specified sum, they, as such property owners, agree, one with the other, and with each other, to have the street graded, and to pay therefor, on completion and acceptance of the work by the city surveyor, the total sum specified *pro rata* as the frontage of their property bore to the whole work. The agreement further provided that the work should be done in accordance with certain plans and specifications, which contained a clause that the fee of the city engineer should be paid by the contractor ''in amounts proportioned to the payments made by the property holders to the contractor, in the ratio of those payments to the contract price, plus engineer's fee.'' The agreement, at •its conclusion, was indorsed by the contractor as follows: ''I accept the above contract of grading on the above terms of payment.'' *Held,* that the agreement, as between the property owners and the contractor, was joint and several, and imposed a liability on each of them to pay the whole of the contract price, and that such intent was not overcome by the reference to the plans and specifications.

ID.—REFERENCE TO OTHER WRITING.—Where, in a contract, reference is made to another writing for a particular specified purpose, such other writing becomes a part of the contract for such specified purpose only.

ID.—INTENTION OF CONTRACT.—The intention of the parties to the contract being clear and unmistakable as to the liability of the property owners, cannot be changed by any subsequent act of the contractor in sending notices to the property owners demanding payment.

ID.—PARTIES—DEFENDANTS JOINTLY AND SEVERALLY LIABLE.—Under section 383 of the Code of Civil Procedure, any or all of the property owners so jointly and severally liable could be joined as defendants in an action to recover the balance of the contract price.

APPEAL from a judgment of the Superior Court of San Joaquin County. F. H. Smith, Judge.

The facts are stated in the opinion of the court.

J. B. Hall, for Appellants.

Budd & Thompson, for Respondent.

BUCKLES, J.—This suit is founded on the contract set out in the complaint made and entered into August 10, 1903, between the plaintiff as contractor and the defendants and S. V. Ryland, Julia H. Weber, H. Multharf, Anna Luhrs, Carl Simon, James E. Kidd, Stockton Savings and Loan Society Bank, Carrie Orschler, and the city of Stockton, owners of real property, which contract is as follows:

"This agreement witnesseth: Whereas, the undersigned, owners of real property in the city of Stockton, California, fronting on Fremont street, between the east line of Center street and the west line of Edison street, are desirous of having said Fremont street, between Center and Edison streets, graded to the official grade of said city; and whereas, Lewis Moreing, as contractor, has offered to do said work of grading for the sum of eleven hundred and fifty-four ($1,154.00) dollars. Now, therefore, we, the undersigned property owners, agree one with the other, and with each other, that we will forthwith have said Fremont street, from the east line of Center street to the west line of Edison street, graded to the official grade of said city of Stockton, and will pay therefor on completion and acceptance of the work by the city surveyor, the total sum of eleven hundred and fifty-four ($1,154.00) dollars *pro rata,* as the frontage of our real property bears to the whole work. And we jointly and severally contract and agree with Lewis Moreing, as contractor, that he shall with all convenient dispatch, and in a good and workmanlike manner, and to the satisfaction of the city surveyor of said city of Stockton, and in accordance with the plans and specifications therefor, grade to the official city grade Fremont street in said city, from the east line of Center street to the west line of Edison street, and for the sum of eleven hundred and fifty-four ($1,154.00) dollars. Payment of said sum to be made on acceptance of said work by R. C. Tumelty, city surveyor, evidenced by his written certificate of acceptance.

"Dated Stockton, Cal., August 10th, 1903."

"I accept the above contract of grading, on the above terms of payment.          LEWIS MOREING,

"Contractor.

"Dated August 10th, 1903."

The plans and specifications referred to in said contract are set forth in the answer, and are as follows:

"Specifications for Grading Fremont St. from the East Line of Center St. to the West Line of Edison St.

"Grading: The grading is to. be done to a roadway width of forty feet. There will be required an embankment of 2,100 cubic yards and an excavation of 1,000 cubic yards to complete the roadway to the proper earth grade to receive the sand as will be shown by marks set by the city surveyor. The embankment other than that made by the excavation must be of sand or earth other than adobe and must be free from vegetable or foreign matter. The grading shall be thoroughly rolled after being well watered. The city steam roller must be used for the rolling and it will be furnished free of charge to the contractor.

"Sanding: The roadway for its entire length and for a width of forty feet shall be sanded by the contractor to a depth of one inch with sand free from earth or clay. This layer of sand shall be applied in the manner and at the time ordered by the city surveyor and the superintendent of streets of the city of Stockton.

"General provisions: All work shall be done in a workmanlike manner to the satisfaction of the superintendent of streets and the city surveyor, and the contractor will be expected to so handle his work as to facilitate the oiling of the roadway by the city of Stockton. The contractor will be expected to pay to R. C. Tumelty, city surveyor of the city of Stockton the sum of six cents per lineal foot, measured along the center line of the roadway, as a fee for his services as engineer of this work. The center line of roadway is 2,836 feet in length and the engineer's fee amounts to $170.16 and is to be paid to him by the contractor in amounts proportioned to the payments made by' the property holders or their agents to the contractor in the ratio of those payments to the contract price plus engineer's fee."

There was a demurrer on the ground: 1. Of defect of parties defendant in that S. V. Ryland, Julia H. Weber, H. Multharf, Anna Luhrs, Carl Simon, James E. Kidd, Stockton Savings and Loan Society Bank, Carrie Orschler, and the city of Stockton are not made defendants to the action; and that, upon the facts stated in the complaint, it appears that the plaintiff has no cause of action for a judgment against the defendants jointly or jointly and severally for the sum of $699 or any sum. The demurrer was overruled. The answer avers defendants and the other of said contracting owners should become bound, each to pay to the plaintiff a *pro rata* part, and no more, of the said sum of $1,154—that is, a part bearing the same proportion to the whole sum that the frontage in feet of the property of each of said owners along the entire line of said work bears to the total frontage of all the said owners, on and along the said line; and that said contract was so understood by all the parties, and deny any other obligation. Judgment was for the plaintiff and against all the defendants except the defendant A. Walters. The appeal is from the judgment.

The questions here involved are: 1. Is the contract joint and several, or is it a several contract with a promise to pay *pro rata?* 2. If joint and several, should all persons signing the contract be made parties?

The court found that the contract was a joint and several one. That plaintiff completed the work mentioned in the contract with all convenient dispatch and in a good and workmanlike manner and in accordance with said plans and specifications, grading to the official grade of said Fremont street from the east line of Center street to the west line of Edison street, and that the work was done to the satisfaction of the city surveyor, on October 22, 1903, and the work was on that day accepted by said city surveyor. The court also found that some of the owners along the line of said work other than the defendants had paid $544.45 of said contract price, leaving a balance due of $609.55 which defendants refuse to pay, and also found there was due from said defendants (except A. Walters) to the plaintiff on said contract the sum of $609.55. The court further found that "it is true that it was the intent and purpose of the property owners signing the

3 Cal. App.—2

contract mentioned in finding 2 . . . that among themselves they should become bound each to pay as specified in said contract° the said contract price, to wit, $1,154 *pro rata* as the frontage of said real property bore to the whole work, but it is not true that it was the intent and purpose of the said entire contract that the defendants and other property owners signing said contract should become bound each to pay to said plaintiff such *pro rata* and no more of the said sum of $1,154, the contract price, nor is it true that the plaintiff so understood the said contract or believed that the defendants so understood it at the time the same was executed; and it is true that the plaintiff relied and acted on the said contract as set out in finding 2 hereof.''

This was not a contract made under the Vrooman act, the law under which most street work is now done, but is a private contract between certain of the owners of frontage on Fremont street, who desired to have that street graded between Center and Edison streets, and the plaintiff. It is joint and several as between these owners and the contractor, made so expressly by the language of the contract. The plaintiff signed said contract under his indorsement thereon as follows: ''I accept the above contract of grading on the above terms of payment.'' And the ''above terms of payment'' are ''for the sum of eleven hundred and fifty-four ($1,154.00) dollars. Payment of said sum to be made on acceptance of said work by R. C. Tumelty, city surveyor, evidenced by his written certificate of acceptance.'' There are no other terms of payment mentioned in the contract, so far as the plaintiff's compensation was concerned. The signers, owners of the frontage, agreed between themselves, as stated in the contract, that they obligated each to the other that, as between themselves, they would each stand for a *pro rata* according to what each owned of the frontage; and it must be borne in mind that there was two thousand eight hundred and thirty-six feet in length to be graded, and that the owners of only seventeen hundred and eighty-five frontage feet signed the contract, and the contract recites an important fact tending to show that the contractor did not enter into the contract pleaded with the understanding that he would have to look to each property owner for his individual *pro rata* according to the front feet he owned. These people had talked the mat-

ter over with the contractor evidently before the signatures of the property owners were secured, for it recites: ''Whereas, Lewis Moreing, as contractor, has offered to do said work of grading for the sum of eleven hundred and fifty-four ($1,154.00) dollars.'' At the time such offer was made he could not have known who or how many of the property owners fronting on Fremont street would pay for such work, and it is not reasonable to suppose that he would make such an offer without knowing to whom he was to look for his pay. The contract then proceeds: ''Now, therefore, we, the undersigned property owners, agree one with the other, and with each other, that we will forthwith have said Fremont street from the east line of Center street to the west line of Edison street, graded to the official grade of said city of Stockton, and will pay therefor on completion and acceptance of the work by the city surveyor, the total sum of $1,154.00 *pro rata,* as the frontage of our real property bears to the whole work.'' This clause of the contract is a simple, plain agreement, not with the contractor, but with themselves and between themselves, each with the other, that as among themselves they would prorate, and with which the contractor had nothing to do. They immediately follow this with the clause in which the contractor is interested, and to which he became bound by his indorsement of his acceptance of said contract, to wit: ''And we jointly and severally contract and agree with Lewis Moreing, as contractor, that he shall with all convenient dispatch and in a good and workmanlike manner, and to the satisfaction of the city surveyor of the city of Stockton and in accordance with the plans and specifications therefor, grade to the official city grade Fremont street [describing the same as above] and for the sum of eleven hundred and fifty-four ($1,154.00) dollars, payment of said sum to be made on acceptance of said work by . . . city surveyor, evidenced by his written certificate of acceptance.''

So far as the terms of the contract are concerned, there certainly is no question as to the meaning and intent of all the parties when the same was executed, to wit: That the agreement was joint and several as to the paying the contractor, and that he should receive the price in one lump sum when the work was completed and properly certified, and that as among themselves (the property owners signing) would col-

lect from each one, and each one promised the other to pay for this contract price a *pro rata* share. In other words, they were to pay this $1,154 to the contractor, and arranged among themselves as to how they would raise that sum. And this was the interpretation the lower court placed upon it. Appellant lays great stress upon the following clause in the specifications as showing a different meaning, to wit: "The engineer's fee amounts to $170.16 and is to be paid to him by the contractor in amounts proportioned to the payments made by the property holders or their agents to the contractor in the ratio of those payments to the contract price plus engineer's fee." The contract refers to this writing, specifications, for the sole purpose of showing that the grading was to be completed "in accordance with the plans and specifications therefor." The rule seems so well established that it may be said to be elementary that where, in a contract, reference is made to another writing for a particular specified purpose, such other writing becomes a part of the contract for such specified purpose only, and, therefore, this writing, known as the "specifications," can serve no other purpose than to furnish the plan and specifications as to how the grading should be done, and is foreign to the contract for all other purposes. (*Neuval* v. *Cowell,* 36 Cal. 648.) It was shown by the evidence that the plaintiff had nothing to do with getting the owners to sign said contract, and that out of the total of two thousand eight hundred and thirty-six feet frontage the signatures of the owners of only seventeen hundred and eighty-five feet frontage were procured, and that the owners of the other one thousand and fifty-one feet frontage did not enter into the contract for said grading.

The contract, the specifications and written notices to pay sent by the contractor to C. M. Weber, Rosa D. Creanor, Mrs. H. S. Shippee, C. Buckley, and D. L. Klench, and also a number of receipts for money paid, were all put in evidence. The following is a copy of one of the said notices and the others are the same in substance:

"Stockton, December 31, 1903.

"Mr. C. M. Weber, Stockton, Cal.

"Dear Sir: There is now due from you the sum of $258.00, being your proportion of the contract price agreed to be paid to the undersigned for grading Fremont street between Cen-

ter and Edison streets in the city of Stockton, under your
contract for said work with the undersigned, dated the 10th
day of August, 1903. You will please call and settle for the
above, and oblige,

                    "Yours truly,

                                   "LEWIS MOREING."

The receipts were in the following form:

"$37.00.                         Stockton, Cal., Jan. 6, 1904.

"Received of Julia H. Weber, thirty-seven 00/100 Dollars
for grading Fremont St.

                    "LEWIS MOREING, by C. F. C."

These notices and receipts were introduced in evidence by
the defendants for the purpose of aiding the court to inter-
pret the contract and to show that the intention of the con-
tractor when he took the contract was to hold each owner
of frontage for only a proportion of the contract price in the
ratio of the number of front feet he might own along the
street to be graded. In other words, to show that plaintiff
understood the contract to be joint and not joint and several.
None of them receiving such notice paid anything.

A contract must be so interpreted as to give effect to the
mutual intention of the parties as it existed at the time of
contracting (Civ. Code, sec. 1636), and the language of the
contract is to govern its interpretation, if the language is
clear and explicit and does not involve an absurdity (Civ.
Code, sec. 1638), and the intention of the parties is to be as-
certained from the writing alone if possible (Civ. Code, sec.
1639.), and not from the subsequent actions of one of the par-
ties. (*Jackson* v. *Puget Sound Lumber Co.*, 123 Cal. 100, [55
Pac. 788] ; *Stockton S. & L. Soc.* v. *Purvis*, 122 Cal. 236, [53
Am. St. Rep. 210, 44 Pac. 561].) As we have shown, the
language of the contract is clear and unmistakable as to the
intention of the parties at the time it was made, and, there-
fore, could not be changed by the subsequent acts of the con-
tractor in sending out these notices. Nothing appears in the
record showing, or in the least way indicating, how the owners
who paid the amount credited paid the same, whether in pro-
portion to their frontage or otherwise. Having received a
portion of the $1,154 from certain of the owners, the contract
being a joint and several one, can the contractor select others

of the contracting parties and recover from them jointly the balance of the contract price? We think he can, and the authority for so doing is found in section 383 of the Code of Civil Procedure: "Persons severally liable upon the same obligation . . . may all or any of them be included in the same action at the option of the plaintiff." (*Slater* v. *McAvoy,* 123 Cal. 440, [56 Pac. 49]; *Heppe* v. *Johnson,* 73 Cal. 265-270, [14 Pac. 833]; *People* v. *Love,* 25 Cal. 520-526; *People* v. *Evans,* 29 Cal. 430.) If this was a joint obligation, and not joint and several, then the joint obligors must all be made parties. "When the liability is joint, all the persons upon whom it rests must be united as defendants in an action brought upon the contract. This rule is general and applies to undertakings, obligations, and promises of all possible descriptions." (Pomeroy's Code Remedies, sec. 271; Code Civ. Proc., sec. 382; *Farmers' Exchange Bank* v. *Morse,* 129 Cal. 239, [61 Pac. 1088].) But this is not merely a joint contract, but joint and several, and therefore the provisions of section 383, Code of Civil Procedure, apply.

The evidence supports the findings, and the findings warrant the judgment.

Judgment and order affirmed.

Chipman, P. J., and McLaughlin, J., concurred.