## JOHNSON v. GRAND FRATERNITY.

(Circuit Court of Appeals, Eighth Circuit. February 4, 1919.)

No. 4989.

1. INSURANCE ⬤⟲695—AGENCY CONTRACTS—CONSTRUCTION.

A contract between a fraternal insurer and agents *held* not to include and provide for commissions on certificates designated as stipulated premium and annuity certificates.

2. CONTRACTS ⬤⟲147(2)—CONSTRUCTION—INTENTION.

A court can seek outside of the written contract for the intention of the parties only when it is not clearly expressed.

3. CONTRACTS ⬤⟲166—EXHIBITS—CONSTRUCTION.

Where exhibits attached to a contract relating to commissions were subordinate, and merely explanatory of details dealt with in general terms in the contract, only such portions thereof as perform that function can be regarded as intended to be operative.

4. INSURANCE ⬤⟲695—FRATERNAL INSURANCE—CONTRACTS—CONSTRUCTION.

A contract between a fraternal insurer and agents *held* unambiguous, and not to allow compensation on certificates designated in exhibits attached merely for illustration as stipulated premium and annuity certificates.

5. CONTRACTS ⬤⟲166—CONSTRUCTION—EXHIBITS.

The mere statement that an exhibit is made a part of the contract is not controlling in determining whether the terms of the contract can be violated by the exhibit.

Appeal from the District Court of the United States for the District of Colorado; Robert E. Lewis, Judge.

Suit by D. E. Johnson against the Grand Fraternity. From an order confirming the report of a special master in an accounting, plaintiff appeals. Affirmed.

George P. Steele, of Denver, Colo., for appellant.

William A. Jackson, of Denver, Colo. (Charles W. Waterman, of Denver, Colo., on the brief), for appellee.

Before SANBORN, CARLAND, and STONE, Circuit Judges.

STONE, Circuit Judge. Appeal, in an accounting under a contract, from the order of the District Court confirming the report of the special master.

Appellant had sued the appellee on account of certain commissions earned by him and his assignors for procuring insurance contracts for the United Moderns, a fraternal insurance organization later absorbed by appellee. As the appellee in connection with this absorption contemplated the assumption of the agency contracts of the United Moderns and as it objected to certain exclusive territory features in the contracts under which appellant and his assignors were working, the United Moderns and these agents replaced the existing agency contracts with others. These new contracts were not only prospective in effect but defined existing commission liabilities. Thereafter appellee contracted concerning these later agency contracts as follows (omitting address and signatures):

"In the matter of your contract with United Moderns relating to commissions on field work heretofore placed by you, and which contract is hereto attached marked 'Exhibit A.'

"This is to certify and guarantee to you that the Grand Fraternity will assume and pay all unpaid commissions according to the terms of said contracts as they mature."

[1] By interlocutory order the court instructed the master to exclude from the accounting all evidence as to commissions earned under two kinds of certificates, designated as stipulated premium and annuity certificates. This action was based on the determination of the court that such certificates were not included within the terms of the contracts. The question of construction thus presented is whether these two kinds of certificates are within these contracts. The body of each of the contracts refers to five classes or kinds of certificates (twenty annual premium, ordinary life, installment at age 70, natural premium, and age 55 convertible), which do not include stipulated premium and annuity forms of certificates. The exhibits, which are attached to the contracts and consist of lists of policies secured by the agent, do include these two kinds. The disputed construction narrows, therefore, to the question of whether the inclusion in the exhibits alone justifies the conclusion that they are to be included in the contracts. The contention of appellee that the contract is clear, complete, and unambiguous must be considered before reaching that of appellant, which is that, under all of the circumstances surrounding the transaction, an intention to include these two kinds of policies must be found. This requires examination of the wording of the contracts.

The two agency contracts (one with M. B. and H. J. Johnson, the other with W. L. Stowers) were identical, except for description of territory and lists of policies as set forth in the exhibits attached to each. Each of these contracts began with the recital of a theretofore existing agency contract wherein the United Moderns agreed to pay—

"certain commissions out of the first annual premium which have heretofore been paid in full, and certain commissions on more recent work which are not as yet fully paid but which are maturing from month to month, that is to say, the parties of the second part were to receive a commission of 60 per cent. on the first annual premium and 15 per cent. of the second annual premium, payable one-fifteenth of the total of 75 per cent. out of each monthly premium as collected, on business written by themselves or organizers in their said territory until fully paid, upon all business written under the twenty annual premium, ordinary life, and installment at age 70 certificates, and 50 per cent. of the first year's premium upon all natural premium and age 55 convertible certificates. A list of the business written by said organizers, and on which any portion of the commissions as aforesaid are unpaid, and the extent to which the same shall be payable, provided the certificates remain in force and make their payments, is shown by the list attached hereto marked 'Exhibit A,' and made a part hereof.

"As a further consideration for said services, it was agreed that during the term of 30 years on all such certificates written as aforesaid, and which remain in force, a renewal commission beginning with the second annual premium should be paid at the rate of $1.10 per $1,000 of insurance in force, said commissions payable pro rata quarterly out of the premium installments as paid. A list of all business written and in force on the books of the party of the first part at this time on which said renewal commissions are payable,

or hereafter payable, showing the date from which the same are hereafter payable is hereto attached marked 'Exhibit B,' and made a part hereof."

After other recitals here unimportant these contracts continued as follows:

"Whereas, the said party of the first part is desirous of securing a cancellation of the contract of the parties of the second part especially as to their exclusive right to do business in the said territory and to employ other agents in said territory, permitting said second parties to only receive a commission upon such new business as they may hereafter write for the order; and

"Whereas, all of said parties desire and have agreed that their said contract together with any and all amendments and modifications which may have been made thereto subsequent to the date thereof, whether expressed in writing or otherwise, shall be canceled, annulled and shall be of no further force or effect from and after this date and that the agreement next hereinafter recited and set forth shall be substituted for and taken in lieu thereof in all respects the same as if said original contract had never been made and as though the agreement herein next following were the original and only agreement between the parties hereto, that is to say:

"United Moderns will pay to parties of the second part the commission and renewals as they mature on business now in force as heretofore stipulated, a commission of sixty per cent. of the first annual premium and fifteen per cent. of the second annual premium, payable one-fifteenth of the total of seventy-five per cent. out of each monthly premium as collected, on business written by themselves or organizers in their said territory, until fully paid, upon all business written under the twenty annual premium, ordinary life and installment at age seventy certificates, and fifty per cent. of the first year's premium upon all natural premium and age fifty-five convertible certificates, payable pro rata as collected, as per the list heretofore attached, marked 'Exhibit A,' and which is made a part hereof.

"United Moderns will also pay for and during the term of thirty years from and after February 24, 1897, as a further consideration hereof, on all such certificates written as aforesaid and which remain in force, a renewal commission, beginning with the second annual premium at the rate of one dollar and ten cents per one thousand dollars of insurance remaining in force, whether transferred to any other form or not, said renewal commissions to be payable pro rata quarterly out of premium installments as paid, all as per list of business written and in force on the books of the party of the first part at this time on which said renewal commissions are payable or which may hereafter become payable, showing the date from which same are hereafter payable, which is hereto attached, marked 'Exhibit B,' and made a part hereof."

Exhibit A, of the Johnson contract was a list of about 515 certificate holders, comprehending seven kinds of certificates as follows: Ordinary life, stipulated premium, twenty annual premium life, age, convertible, installment age seventy, and natural premium. Exhibit B contained a list of about 2,000 certificate holders of five kinds as follows: Annuity, twenty annual premium, installment age seventy, stipulated premium, and ordinary life. Exhibit A of the Stowers contract contained about 175 certificate holders of five kinds as follows: Ordinary life, stipulated premium, annual premium life, age, and convertible. Exhibit B contained about 1,000 certificate holders of five kinds as follows: Annuity, annual premium life, ordinary life, installment age, and stipulated premium.

[2] This difference between the contracts and the exhibits attached to them is apparent, but if, under accepted legal rules, there is no

ambiguity in the contracts, there is no right in the court to do more than declare what the plain wording of the contract imports. A court can seek outside of a written contract for the intention of the parties only when that intention is not clearly expressed within the writing itself.

[3] If the exhibits are parts of the respective contracts of equal force and effect as other parts, then an ambiguity exists. If they are subordinate, and merely explanatory of details dealt with in general terms in the contract itself, then only such portions of the exhibits as perform that function can be regarded as intended by the parties to be operative. Guerini Stone Co. v. Carlin, 240 U. S. 264, 277, 36 Sup. Ct. 300, 60 L. Ed. 636.

[4] What office did these contracting parties intend these exhibits to fill? Without these exhibits the contracts were complete and unambiguous, and were, beyond question, applicable to but five classes named therein. Suppose there had been no exhibits attached to the contracts, but the appellant had undertaken to show that these very lists were discussed and in the minds of the parties during the negotiations leading up to the contracts, and therefore the contract should be construed as containing seven classes of certificates. Obviously, such a result would have been denied as making, not construing, a contract. Immediately following the naming of the five classes of certificates, in each of two places in the contracts, are the only references in the contracts to Exhibit A as follows, respectively:

"A list of the business written by said organizers, and on which any portion of the commissions as aforesaid are unpaid, and the extent to which the same shall be payable, provided the certificates remain in force and make their payments, is shown by the list attached hereto marked 'Exhibit A,' and made a part hereof. * * * As per the list heretofore attached, marked 'Exhibit A,' and which is made a part hereof."

The references to the renewal commissions are equally significant. If the exhibits contained other policies, they had no place there. The very careful naming in the contract (which was prepared by appellant) of five classes of certificates is highly significant of the intention of the parties to exclude all other classes. The only function of these exhibits was to set out in detail the policies within the general description of the contract to prevent any future dispute as to any particular policy belonging in such classes by definitely identifying it.

Situations similar to those in this case have been heretofore met in this court and elsewhere and disposed of in line with the above. Miller v. Hamilton, 216 Fed. 131, 133, 132 C. C. A. 375; Daly v. Busk Tunnel Ry. Co., 129 Fed. 513, 64 C. C. A. 87; Cruthers v. Donahue, 85 Conn. 629, 84 Atl. 322, Ann. Cas. 1913C, 221; Meyer v. Berlandi, 53 Minn. 59, 61, 54 N. W. 937; Boteler v. Roy, 40 Mo. App. 234, 240; Moreing v. Weber, 3 Cal. App. 14, 20, 84 Pac. 220; Hayes v. Wagner, 113 Ill. App. 299, 301 (affirmed 220 Ill. 256, 77 N. E. 211); B. & O. R. R. Co. v. Stewart, 79 Md. 487, 497, 29 Atl. 964; White v. McLaren, 151 Mass. 553, 24 N. E. 911; Reichert v. Brown, 38 Misc. Rep. 782, 78 N. Y. Supp. 834.

[5] The mere statement that the exhibit is "made a part" of the contract is not controlling. Daly v. Busk Tunnel Ry. Co., supra; Cruthers v. Donahue, supra; Meyer v. Berlandi, supra; Boteler v. Roy, supra.

The judgment is affirmed.