OFFICE OF THE ATTORNEY GENERAL OF TEXAS

AUSTIN

Gerald C. Mann
Attorney General

Honorable C. D. Simmons, Comptroller
University of Texas
Austin, Texas

Dear Sir:

Opinion No. O-4938
Re: Construction of Mc-
Alester Fuel Company
Contract.

We have your letter of February 19, 1943, re-
questing our opinion construing certain provisions of
a contract between The McAlester Fuel Company and The
State of Texas covering the fiscal year 1942-43, from
which letter we quote:

"The McAlester Fuel Company, with general
offices at McAlester, Oklahoma, and with other
offices at 3002 Junius Street, Dallas, Texas,
and also at Rockdale, Texas, has the contract
for furnishing lignite to The University of
Texas for the fiscal year 1942-43. In ren-
dering their invoices for shipments of lig-
nite to the University for the weeks ending
December 5, 12, 19, 26, and January 2 there
has been listed on each invoice an item,
"Transportation Tax $0.04 per ton", with
the dollar amount inserted on the invoice
computed on the basis of the weight of
lignite covered by that particular invoice.
We have notified the company that this
charge is not a proper one according to
our understanding of the contract. The com-
pany has replied that the charge is a proper
one in accordance with the contract. May
we have your official advice on the question?

" * * *."

Pertinent provisions of the contract in question are the following:

"The Party of the First Part hereby contracts, agrees, binds and obligates itself to furnish to the University of Texas of the State of Texas approximately 27,500 tons of Lignite for a period of one year beginning the first day of September, A. D. 1942, as needed, in accordance with the provisions of the State Statutes, and of the notice to manufacturers, specifications, and proposals submitted by the Party of the Second Part, and opened by the State Board of Control on July 28, A. D. 1942, and made a part of this contract, and the State of Texas, by and through its State Board of Control, hereby accepts said bid and specifications of the Party of the Second Part, and agrees under the terms thereof to purchase Lignite for the University of Texas hereinbefore mentioned from the Party of the Second Part throughout the period covered by this contract.

" * * *.

"All terms and conditions of the attached specifications are hereby expressly agreed to and accepted by the parties to this contract * * *."

" * * *.

" * * * All Lignite to be of good grade mine run lignite of not less than 10,900, BTW's per pound on a 'dry basis' determined by calorific analysis and in accordance with the specifications contained in the bid of The McAlester Fuel Company. All transportation charges must be prepaid by the Party of the Second Part.

"The said University of Texas and the State of Texas agree to pay to The McAlester Fuel Company the sum of One Dollar and Seventy-three Cents ($1.73) per ton F.O.B. Austin, Texas for each and every ton of lignite delivered under this contract. The above price of One Dollar and Seventy-three Cents ($1.73) per ton for all Lignite delivered under this contract shall be subject to the bonuses and penalties which shall be added to or deducted from the price per ton for the beneficial characteristics found in accordance with the schedule contained in the bid of the McAlester Fuel Company, which is attached hereto, and made a part hereof for all purposes.

"It is understood and agreed that in the event the United States of America or the State of Texas imposes a severance tax or other direct tax on Lignite during the life of this contract, and the Seller has to pay the tax, that such tax will be added to the Seller's price on Lignite.

" * * *.

"It is further contracted and agreed that, upon any breach of the terms of this contract, which shall be construed to include specifications, bids, and proposals connected therewith and hereto attached this contract may be cancelled and annulled by Party of the First Part * * *.

" * * *.

"This contract has been entered into by authority of a resolution duly entered into by the Board of Control of the State of Texas,

after calling for bids and advertisements there-
of as required by law, and upon Party of the Second
Part being the lowest and best bidder, and all
laws authorizing and directing the making of this
contract having been complied with, there being
attached and made a part hereof for all intents
and purposes the following :

"EXHIBIT A: Conditions of Proposal and
specifications for lignite.

"EXHIBIT B: Bid of McAlester Fuel Company."
(Emphasis ours)

The pertinent part of the bid referred to in the
above quoted portions of the contract reads.

"The above bid, is based upon the present
freight rates applying on shipments of lignite
from Sandow, Texas, to Austin, Texas; should
there be any increase or decrease in the freight
rates or Federal Taxes on same, the price shown
above will be increased or decreased accordingly."
(Emphasis ours).

The general rule that writings which are either
annexed to or referred to in a contract will be construed
as a part of the contract is well stated in 17 C.J.S.
716, Sec. 299.

A cursory examination of the contract, from which
we have quoted copiously, discloses the fact that almost
every provision therein contained is referable to and
dependent upon the terms and conditions of the "specifications,
proposals and bid" which are "made a part" thereof by
reference and are annexed thereto as Exhibits. Without
such exhibits it is clear that the contract is incomplete.
Moreover, the contract contains its own specific rule
of construction requiring that the exhibits shall be con-
strued as part thereof: "the terms of this * * * contract
shall be construed to include specifications, bids and
proposals connected therewith and hereto attached".

It is fundamental that in construing contracts, effect will be given to all provisions therein contained, if possible. It is likewise fundamental that the expressed intent of the contracting parties must be given effect.

We think that, under the rule of construction laid down in the contract itself, the provisions contained in the specifications, bid and proposals must be given the same weight, and that they are of equal force and effect of any other provisions contained in the contract. Unless there is some ambiguity or conflict between the various provisions of the contract, no construction is needed. We find no such conflict and no such ambiguity as to justify a construction of the contract. It is clear and explicit with reference to the matters therein contained. It specifically provides that in the event of an increase or decrease in freight rates or of Federal taxes thereon, that the price provided for in the contract shall be increased or decreased accordingly.

We, therefore, advise you that if the freight rate has increased or if the Federal taxes thereon have increased the seller is entitled to add such increase to the price of the lignite and the purchaser under this contract is obligated to pay such additional amount. Conversely, if such rates or taxes should be decreased then the purchaser would be entitled to have the advantage of such decrease in the price paid.

Our attention has been called to the cases of Johnson v. Grand Fraternity, 255 Fed. 929 and Delaney v. Farmers State Bank, 115 S.W. (2d) 736. We think that neither of such cases is in point here. The Johnson case is authority for the general proposition that the statement that the exhibit is "made a part" of a contract is not controlling, and that where the provisions of the contract and those of the exhibit are in conflict the provisions of the contract will control. The Delaney case did not involve an exhibit at all but a general reference to contracts between other parties, and the court held

that such general reference could not have the effect of substituting the provisions of the contract referred to "for the specifically expressed provisions of the contract." We have neither of such situations presented here.

On the contrary, the contract before us specifically provides that it shall be construed to "include specifications, bids, and proposals connected therewith". We can no more disregard this provision of the contract than we can disregard any other provision therein contained.

It has also been suggested that the portion of the bid providing for the addition to the selling price of an increase of freight rates or Federal taxes is in conflict with that portion of the contract which provides that if State or Federal "severance taxes or other direct taxes" are levied upon lignite", and seller has to pay such taxes the amount so paid shall be added to the selling price, because it is said that only "severance or other direct taxes on lignite" were in the minds of the contracting parties and that such provision supercedes the said provision in the bid. To this we cannot agree for the reason that it is obvious that a Federal tax upon freight rates mentioned in the bid is neither a "severance tax" nor is it any "other direct tax upon lignite". The two are altogether different and distinct. Furthermore having included the provision for the addition of such transportation taxes in the bid which, under the specific language of the contract, must be construed as a part of it, it was neither necessary nor desirable to reiterate such provision in the additional writing.

Again it is suggested that the provision that "all transportation charges must be prepaid "by the seller is in conflict with the provision that increased Federal transportation taxes shall be added to the price. The bid was made F.O.B. Austin, Texas. It seems fairly obvious that all parties to the contract, at all times, expected seller to pay such transportation charges. This, however, does not, in the least militate against our conclusion that there is no conflict in such provisions. It is equally as

obvious that if the parties had contemplated payment of transportation charges by the buyer there would have been no reason and no justification for adding an increase in such charges to the selling price, nor would there have been any reason for the provision decreasing the selling price in the event of a decrease in such charges.

Trusting that the above fully answers your inquiry, we are

Very truly yours

ATTORNEY GENERAL OF TEXAS

By /s/ Fowler Roberts
Fowler Roberts
Assistant

FR:nw

APPROVED MAR 23, 1943

/s/ Gerald C. Mann

ATTORNEY GENERQL OF TEXAS

OK
GCB

APPROVED

Opinion
Committee

By BWB
Chairman