[Civ. No. 5305. First Appellate District, Division One.—March 15, 1927.]

## BAVIN & BURCH COMPANY (a Corporation), Respondent, v. L. L. BARD et al., Appellants.

[1] BUILDING CONTRACTS—CHANGES IN PLANS AND SPECIFICATIONS—APPROVAL OF ARCHITECT.—A provision in a building contract requiring the written order of the architect and an agreement as to price, prior to changes or modifications from the plans or specifications, is designed for the protection of the owner and is to be construed in his favor, and without compliance therewith by the contractor the owner cannot be charged for extra work.

---

1. See 6 Cal. Jur. 371.

[2] ID. — EXTRA WORK — FAILURE TO SECURE WRITTEN APPROVAL IN ADVANCE—SUBSEQUENT APPROVAL BY ARCHITECT—RIGHT OF CONTRACTOR TO RECOVER.—In an action by a contractor to recover for extra work performed and materials furnished under a building contract, which contained a provision that no changes or modifications from the plans or specifications would be permitted except upon the written order of the architect and that the cost of such changes must be agreed upon in writing before the same were started, the contractor was entitled to recover although he did not obtain a written order from the architect before commencing work, but began work on the architects' oral order which he afterward confirmed in writing, there being no lack of good faith and the owner having accepted the benefits of the work and material.

[3] ID.—SUBSTANTIAL COMPLIANCE—ACTS CONSTITUTING—QUESTION OF FACT.—Substantial compliance with the terms of a contract meets the requirements of any obligation, but what acts will constitute a compliance sufficient to meet the requirements of the law is a question to be determined in each individual case.

[4] ID.—VERBAL ORDERS—SUBSEQUENT WRITTEN RATIFICATION.—In such action, written orders of the architect for changes in the contract, issued during the progress of the work and soon after his verbal orders therefor, related back to the date of the verbal orders, constituting with the verbal order but one transaction.

[5] ID.—ADMISSION OF CONTRACTOR'S CLAIM—DISPUTE AS TO AMOUNT —RESCISSION.—In such action, where plaintiff alleged furnishing extra work and materials with consent of defendant owners and lessees, and they so admitted, but denied the alleged value, the only question was one of value, and defendants would be deemed to have rescinded the contract provision requiring modifications to be in writing.

[6] ID.—PROVISION REQUIRING MODIFICATIONS TO BE IN WRITING—RESCISSION—PAROL AGREEMENT FOR ALTERATIONS.—In such action, the parties could rescind the provision requiring modifications to be only upon the written order of the architect and agree to alterations by parol.

2. Right of contractor to recover for extra work ordered by architect but not ordered in express manner provided by contract, notes, 7 Ann. Cas. 213; 17 Ann. Cas. 81. See, also, 6 Cal. Jur. 375; 6 R. C. L. 909.

3. Substantial performance of building contracts, notes, 30 Am. St. Rep. 616; 134 Am. St. Rep. 678; 24 L. R. A. (N. S.) 336. See, also, 6 Cal. Jur. 420, 422; 6 R. C. L. 767. When complete performance of building contract is necessary, note, 59 Am. St. Rep. 285.

6. Waiver of stipulation that alterations or extras must be ordered in writing, note, 48 L. R. A. (N. S.) 575, 578. See, also, 6 R. C. L. 911.

[7] ID.—PERMITS — ORDINANCES—CONSTRUCTION.—In such action, the contractor was not liable for cost of alterations required by the city during work of changing a building to a theater under a clause that the contractor should procure permits and be liable for loss due to a violation of city ordinances or laws.        .

[8] ID.—COMPLETION OF WORK—TIME—DELAYS—DAMAGES—SET-OFF— EVIDENCE—FINDINGS.—In such action, the finding that the contractors would and could have finished their work within the time specified by the contract, had it not been for extra items ordered .by the owners was supported by the evidence, and the owners were not entitled to set-off for delays beyond the contract time· for completion by alterations in plans during work where no damages are shown.

---

(1) 9 C. J., p. 845, n. 62.    (2) 9 C. J., p. 846, n. 63.'    (3) 9 C. J., p. 739, n. 23.    (5) 9 C. J., p. 847, n. 71.    (6) 9 C. J., p. 847, n. 73. (7) 9 C. J., p. 848, n. 79.    (8) 9 C. J., p. 787, n. 72.

APPEAL from a judgment of the Superior Court of Los Angeles County. Albert Lee Stephens, Judge. Affirmed.

The facts are stated in the opinion of the court.

James, Pace, Smith & Younkin for Appellants.

G. C. De Garmo and H. B. Cornell for Respondent.

PARKER, J., *pro tem.*—In this action plaintiff sues to recover on an express contract for work and labor performed for, and materials furnished to, defendants. It seeks, further, to enforce a claim of lien against the premises benefited by such labor and materials. Judgment went for plaintiff against defendants and the case comes here on appeal by defendants.

The defendants Bard and Berkowitz are lessees of the premises owned by the remaining defendants, and the judgment was against the said lessees only, with decree foreclosing the lien.

There is no question presented involving the procedure as to the lien as separate from the judgment, nor is there any controversy as to the rights of the defendants in their separate capacities as owners or lessees. The questions raised concern the judgment; and for the purposes hereof

it will be deemed that if the judgment should be affirmed, in whole or in part, the lien follows.

Plaintiff and defendants (Bard and Berkowitz) entered into a written contract, wherein the said defendants were described as owners and the plaintiff as contractor. The dispute between the parties involves certain charges made for extras under the contract. The original work specified was duly performed and the price paid, and no controversy is presented as to such work or payment. It may be stated that the contract was quite general in its terms, and consists of an agreement, plans, specifications, drawings, and an addenda to the specifications. From none of these does it appear precisely what was to be done under the original undertaking. This may be due merely to the absence of the drawings, and possibly by reason of the fact that the questions here for determination do not require such detail. The general purpose of the contract was the renovation and alteration of the premises in order to convert the existing building into a moving-picture theater. In studying the original agreement it seems obvious, and the case as a whole supports the conclusion, that the parties were not informed as to exactly what might be necessary to secure the result desired, as would appear in part from a provision of the contract as follows: "Should the owners at any time during the progress of work require any alterations, deviations from, additions to or omissions from the contract, or the drawings or specifications, they shall be at liberty to do so, and the same shall in no way affect or make void this contract, but the amount thereof shall be added to or deducted from the amount of the contract price as the same may be by fair and reasonable valuation."

The claim of plaintiff, and upon which the trial court predicated its judgment, embraces some thirty items for extras in the way of labor and materials. Without giving the items in detail they were referred to throughout the records as orders, and they may be divided into three groups, as follows: Orders 1 to 5, inclusive; orders 6 to 26, inclusive (incidentally, here it may be noted that there was no order 25); orders 28, 29, 30. Plaintiff recovered judgment for the sum of five thousand eight hundred and eighty-two dollars and thirty-nine cents ($5,882.39).

The argument of appellants is as follows:

First—Lack of written orders for various items of extra work.

Second—Extras caused by reason of plaintiff's failure to comply with requirements of city building department.

Third—Items charged as extras which were provided for in original contract.

Fourth—Failure of evidence to sustain findings on certain items.

Fifth—Failure of court to allow credit for items omitted from original contract.

Sixth—Set-off claimed as damages for delay in completion.

(1) Lack of written orders.

Necessarily of controlling importance here are the terms of the contract. In the contract it is provided: "No changes or modifications from the plans and specifications will be permitted excepting upon written permission from the architect, and the cost of any such change, whether a deduction or extra, must be agreed upon in writing before the same is started. The architect reserves the right to make any such changes or deviations without in any way invalidating the contract or bond."

The facts as disclosed by the evidence are that it was the practice of the architect to visit the work at frequent intervals and go over the requirements with the contractor. When there appeared the necessity for any particular item agreed upon as an extra the architect would orally direct the contractor to proceed and the price would be fixed. Thereafter a written order would follow. With the exception of orders 28, 29, and 30 the contractor did receive a written order from the architect for every item claimed as extra work, and in each instance the order was received before the work was completed. As to the items excepted there were no written orders. The testimony regarding orders 6–26 is not at all clear. All that appears concerning these is the statement that these orders were prepared by the contractor and left at the office of the architect, and that they would usually lay around for a week or so, and that the work on some of the items was commenced before the orders were actually received.

[1] The provision in the contract requiring the written order of the architect and agreement as to price is a provision designed for the protection of the owner and

is to be construed in his favor. Courts generally have held this provision in a building contract as valid and binding, and have further held that without compliance therewith by the contractor the owner cannot be charged for extra work. The California cases are in accord with the general rule (*Gray* v. *La Societe Francaise*, 131 Cal. 566, 569 [63 Pac. 848] ; *White* v. *San Rafael & S. Q. R. R. Co.*, 50 Cal. 417]). Indeed, in almost every jurisdiction the rule is accepted, though in some courts a tendency has developed to modify the strictness of the rule by declaring a waiver when benefits have been accepted and retained. The purpose of a provision of this sort in a contract is to protect the owner from unnecessary or unwarranted expense and to assure him that there will be some limit to his outlay. The average person desiring to construct a home or other building would be wholly at the mercy of his architect and contractor if the courts were to hold such a provision ineffectual for any purpose. No harm can come to the contractor nor can any loss or damage ensue to him by a strict enforcement of a provision of this character. He has his contract, and is bound only by the provisions thereof. He is not obliged to do anything extra without the written order, and knows that if he does he must speculate upon the owner's pleasure as far as payment is concerned. We are called upon to determine whether or not this provision in the present contract has been met.

[2] Appellants concede that the labor for which payment is sought was actually performed and that likewise the materials were supplied. They accept the finding of the court that the charge was reasonable, and the record discloses that the benefits of the labor and material have accrued to the premises. They rest their whole contention upon the words of the contract "before the same is started" in the provision quoted.

The transcript shows that the general work to be done under the contract was tied up with the extras; in other words, it was not a case of completion of the first agreement and then something additional, but the extras were interjected into the work as it progressed and were an integral part thereof. The situation was foreseen, obviously, in the execution of the contract itself. As we have seen, the work in hand was the alteration of an existing building

for a specific purpose, and was initiated under general plans. No one knew just what each day would develop in the necessities of the situation. The owner for his protection inserted the clause as to extras, and placed in charge his representative, the architect. The contractor in turn was obliged to look to the architect for his directions, and for his protection to receive from him written orders as to the requirements. The contractor did attempt to secure these written orders from the architect and was successful. However, anticipating to a certain extent, he would on the oral order alone commence his work, expecting to receive immediately the written order confirming the previous directions.

We would not decide at this time that the possession of a written order obtained long after the work had been completed would always be a sufficient answer to a contention similar to the claim of appellants here. But, in a case, as in the instant one, where there is no lack of good faith charged, where the owner has had the protection of his architect before the commencement of the work, and has accepted the benefits of the work and materials, it would indeed be too strict a construction to hold that the contractor must lose the value of his outlay and labor. This court will hold that under the present state of facts as outlined there has been no breach, confining the effect of this conclusion to the facts involved here and declining to announce any general rule. Indeed, it would be beyond human ingenuity to anticipate every set of facts which might arise and cover them with one general rule. We will approve and uphold the doctrine prevailing as to the necessity of compliance with these requirements, and treat each case on its own facts where a different doctrine is contended for. In the present case it is unnecessary to deviate from the established authorities or to modify the rulings in any respect. We hold simply that under the facts here brought out the contractor did make a sufficient and substantial compliance with both the letter and spirit of this provision of the contract to entitle him to recover. We deem citation of authority unnecessary to support this view. An exhaustive search has failed to disclose any case at all similar in its facts. [3] Nor do we need to refer at length to the law of contracts generally, it being suffi-

cient to rely on one of its elementary and well-settled principles, namely, that a substantial compliance meets the requirements of any obligation. Just what acts will constitute a compliance sufficient to meet the requirements of the law is a question to be determined in each individual case. In this case almost as a question of fact we determine that the contractor and architect, as well, have made a sufficient compliance with the provisions of the contract. On the question of substantial compliance reference may be had to Ruling Case Law, volume 6, page 966 et seq.; Cal. Jur., volume 6, page 415 et seq., each of the foregoing citing numerous cases from various jurisdictions. In hardly any case will the facts be found as compelling as in the instant case. Here the owner has designated the architect as his representative on the work, and has given him the discretion to determine what shall be classed as extras, but requiring of the contractor that all extras be approved by said architect in writing before the work was commenced. The written order of the architect obviously was intended to safeguard the owner against unwarranted claims for extras or unfair charges. This protection is fully given if the architect at any time during the progress of the work on the extras gives the written order after he has first approved and ordered it as was done here.

In the case of *Abels* v. *City of Syracuse,* 7 App. Div. 501 [40 N. Y. Supp. 233], a question similar to the one at bar arose, wherein the commissioner, occupying a position parallel with that of the architect here, had not given his order before the work had been commenced but did so afterward. The court said: "This provision of the contract could be waived, and *whether waived or not* it was ratified and adopted by the commissioner in writing, *which was an equivalent to an original authorization* in writing."

[4] In the instant case we hold that the written orders of the architect complied with the requirements of the contract, that these orders issued in close relationship in point of time to verbal orders given by him, and that the whole constituted but one transaction, and the written orders given subsequent to work commenced related back to the date of the original verbal order.

This disposes of orders 1 to 6, inclusive, and orders 7 to 26, inclusive.

The remaining items are embraced in orders 28, 29, and 30. The court found that these were executed and performed at the instance and request of defendants, and fixed the reasonable value of the three items at the sum of $748.81.

[5] It is conceded that there were no written orders from the architect for any of these items; but respondent contends that the appellants are precluded from raising the question as to lack of written orders by reason of their having failed to urge it in the court below, either by pleading or by timely objection. As to the pleadings, plaintiff alleged the contract, and that it had performed extra work and furnished materials to the reasonable value of $5,589.74. Defendants admitted that plaintiff had performed extra work and furnished materials, but denied the reasonable value thereof was greater than $2,250. Plaintiff alleged in its complaint that all of the improvements alleged were made with the full knowledge and consent of the defendants. Defendants Bard and Berkowitz in the answer so admitted. The only issue, therefore, presented to the trial court by the pleadings was on the question of reasonable value. At the trial, when plaintiff offered in evidence the bills for the work and materials embraced in orders 28, 29, and 30, the same were admitted and received without objection, and no subsequent or any motion to strike was made. The defendant Bard, testifying in his own behalf, stated "When the bills finally came to us from the architect we looked them over and made our objections immediately. We based our objections on the fact that to a layman they looked entirely too high." The court found, in response to the issues and the evidence, the reasonable value of these items 28, 29, and 30; and also found, as admitted in the pleadings, that the work represented by them was done with the full knowledge and consent of the defendants. Appellants, in reply to the contention of respondent, argues that no waiver was pleaded, and that a waiver must be affirmatively alleged and proved. Conceding this to be true, it does not necessarily follow that a waiver may not arise as a matter of law. Indeed, we may grant there was not a waiver as such, but rather a failure to urge a right claimed; but whether it be a waiver or otherwise, the fact is that the question was and is not

before the court for determination. Reviewing the record, as stated, it is evident that the court was compelled to find according to the admission in the pleadings and the issues raised therein. [6] Whether the contract provided against extra work except agreed in writing is immaterial, for the parties could rescind the provision in the contract if they chose, and agree to alterations by parol. This proposition is firmly established in the case of *McFadden* v. *O'Donnell,* 18 Cal. 160, and in the case of *Headley* v. *Cavileer,* 82 N. J. L. 635 [82 Atl. 908], found in 48 L. R. A., New Series, at page 564, accompanied by an exhaustive annotation. Surely there could be no greater evidence of rescission than the sworn statement or admission of the owner that the alterations were made with his full knowledge and consent, and his failure or refusal to raise the question at the trial. While we have indicated heretofore the disposition of the California courts to uphold and enforce stipulations in contracts requiring written orders, yet many cases may arise where these stipulations would meet the description given them by other courts, viz., a "cut-throat" claim in building contracts liable to entrap the unwary contractor (*Elgin* v. *Joslyn,* 36 Ill. App. 301), "a shabby defense to set up" (*Myers* v. *Sarl,* 14 Eng. Ruling Case Law, 656).

This disposes of items 28, 29, 30; and it might likewise suffice for the orders 1–26 hereinbefore discussed. However, as some effort was made to raise issue at the trial on orders 1–26, we have given appellants their opportunity for determination of the point involved.

(2) Extras caused by reason of failure of plaintiff to comply with requirements of city building department.

The contract provides: "Contractors shall take out all building permits, and owners shall not in any way be answerable for any loss or costs by reason of the violation of city ordinances or other laws by the contractor or anyone working through or under it."

[7] The situation disclosed by the record is that after examination of the premises, and from time to time as the work progressed, it developed that the premises were not of an original construction to permit the change contemplated, namely, the change to a moving-picture house. The building had formerly been used for other purposes,

and the building department of the city of Los Angeles informed the owners that the proposed changes could not be made in the building without some alterations in the structure itself. Through no fault of the contractor, and unconnected with its contract, these requirements had to be met. Accordingly the architect, after consultation with the owners, gave his written instructions to the contractor to proceed with these alterations as extras within the terms of the contract so providing. Obviously the contractor is entitled to his recovery, and particularly so in the contract here under review, where, as before indicated, the plans were general and the work to be performed left much to be determined as the plan progressed.

(3) Items charged as extra work that are provided for by the original contract.

On these items we are content to accept the finding of the trial court, made upon sufficient evidence unnecessary to detail here. The claim of appellants hereunder is based upon a construction of certain provisions in the plans, in themselves general and indefinite. All of these items were considered by the architect as being extras, and he was designated by the owners as the sole arbiter of the question, and the trial court, as indicated, found that they were extras and allowed compensation therefor, which finding will not be disturbed.

(4) Failure of evidence as to certain items or orders allowed.

In these instances we find sufficient evidence, though conflicting, to sustain the finding of the trial court.

(5) Credits for items omitted from original contract.

The work covered thirty items of extras and alterations, and the original contract involved an expenditure of $20,000. After an attempt at analysis of some of the provisions in the original contract, appellants present their contention to this court as follows: "Clearly the undisputed testimony demands some allowance for omitted work, and the finding to the contrary and the refusal of the court to allow any credit is wholly without support."

The functions of this court are perhaps sufficiently speculative in themselves without assuming new burdens. We will accept the finding of the trial court rather than attempt to locate and determine what this claimed "some allowance" might be.

(6) Failure to allow set-off as for damages for delay in completion.

The contract provides: "Contractor agrees to complete the work hereby contracted for in sixty working days from the date of the contract. It is further agreed that the said contractor shall not be held responsible for any delays caused by the owners or their representatives."

[8] The trial judge found: "That the failure of said plaintiff to complete the work described in said original contract within the time therein specified is due wholly to the extra work which said plaintiff was required by said Bard and Berkowitz to do in connection with the original contract; and said plaintiff could and would have completed the work described in said contract within the time therein specified, except for the extra work which it was required to do by said Bard and Berkowitz. That said defendants have not nor has any of them been damaged in any amount by reason of the failure of said plaintiff to complete said alteration and remodeling work within the time provided in said contract."

The admitted fact is that the contractor took fourteen or fifteen additional days in completing the entire work, including the extras. The evidence shows, and it is not disputed, that the work would and could have been finished were it not for the extra work ordered by the owners.

Appellants cite the case of *Dermott* v. *Jones,* 64 U. S. (How.) 220, 228, 229 [16 L. Ed. 442, see, also, Rose's U. S. Notes]. The case is not in point or at all illuminating as to the question here presented. The testimony shows that approximately thirty per cent of the entire work was extras ordered by the defendants and which the contractor was obligated to perform at their direction. The evidence fully supports the finding of the court. Further, the only evidence as to damage was the testimony of Bard that the rental value of the premises was $3,000 per month. Conceding the rental value to be as stated, there is not one word of direct testimony that there was any loss of rental, or that the premises were not in condition to be used for any period other than as we might draw the inference from the fact that the building was undergoing extensive repairs.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.