[Civ. No. 13630. Second Dist., Div. Three. Nov. 4, 1942.]

ROSCOE MOSS COMPANY (a Corporation), Appellant, v. JOHN JENKINS, Respondent.

370

Loyd Wright, Charles E. Millikan and Morris J. Stephan for Appellant.

Smith & Smith for Respondent.

SHINN, J.—Plaintiff contracted to drill, case and test a water well for defendant upon his ranch in Santa Barbara County. According to the contract, which was in writing, it was to be drilled with a rotary outfit on a site selected by the owner and to a depth not in excess of 300 feet, the owner to have the privilege of stopping further work at or below 200 feet. Plaintiff was to furnish all labor, tools and machinery, and materials which included 100 feet of 16-inch casing and 150 feet of 12-inch casing, arc welded, and equipment necessary to install the casing properly in the well bore. The casing was to be perforated as directed by the owner and sand-pumped by the contractor after perforating. The agreement provided that, "The Contractor does not agree to find or develop water, but he does agree to drill any well called for herein in a good and workmanlike manner." The contract price was to be $1,392.41 for drilling and reaming the bore and setting and perforating 100 feet of 16-inch and 150 feet of 12-inch casing; for any greater or lesser depth of well cased and drilled, $5.11 per foot was to be added or deducted from said price and the total amount earned was to be paid on completion of the work.

The well was drilled by the rotary method at a location selected by defendant, was stopped at 290 feet upon instructions of defendant, it was cased to 282 feet, the casing was perforated and the well was swabbed and sand-pumped. At the request of defendant there were no perforations above the 132-foot level because defendant feared that perforations above that level would draw water from a small domestic well nearby which was 140 feet deep and because it was desired to avoid a stratum of fine, white sand which was above the 132-foot level; also because the owner considered that there was no water available above that level. When completed and sand-

pumped the well produced only between 600 and 700 gallons per minute from a pumping depth of about 133 feet and was not considered to be a usable well. Thereafter plaintiff worked on the well for several months, sand-pumping and cleaning it out in an unsuccessful effort to increase the flow of water. At the contract price plaintiff earned $1,555.93. Payment was demanded and refused and this action was brought to recover that amount.

The complaint alleged performance by plaintiff of its obligation under the contract. Defendant answered, alleging on information and belief that the well, if properly drilled, would have been capable of producing more than 1,200 gallons per minute at a pumping level of less than 50 feet "but that by reason of poor workmanship on the part of the plaintiff in drilling and working on said well, the said well failed and still fails to produce more than 600 gallons per minute at a pumping level of approximately 135 feet." It was further denied that plaintiff drilled the well in a good or workmanlike manner and it was alleged that the failure of the well was due in part to the fact "that rotary drilling was not suited for the purpose of properly drilling said well on defendant's land." Defendant also filed a cross-complaint alleging, in his first cause of action, generally, that plaintiff had failed to drill the well in a good and workmanlike manner and that by reason thereof defendant had lost a valuable lease on the property and had been damaged in the sum of $8,623.75 through loss of rental which would have been earned under the lease had the well been a successful one. In the second cause of action it was alleged that plaintiff "warranted and represented to defendant that a rotary type well was more efficient and more certain to produce a water well than any other method of drilling" and that plaintiff recommended rotary drilling and "that said failure of said well was due in part to the fact that rotary drilling was not the method of drilling suited or fitted for the purpose of properly drilling a water well on defendant's land." It was alleged that defendant had been damaged by breach of the warranty in the said sum of $8,623.75 through loss of the lease and rentals.

The case was tried before a jury and it was stipulated that if the verdict went for plaintiff it should be in the amount sued for. At the close of the evidence defendant abandoned the second cause of action of the cross-complaint and in reply

to a statement that he had announced an abandonment of the same, stated, "I agree with that. I limited my proof to the other count, and I quite agree with counsel also that that count in the cross-complaint—I do not just compute the years—would probably be barred all right," whereupon the court granted a motion for a directed verdict upon the second count of the cross-complaint and denied a like motion as to the first count of the cross-complaint. The case went to the jury after denial of motions on each side for directed verdicts on the complaint and answer, and a verdict was returned in plaintiff's favor in the amount of $1,555.93. After entry of judgment defendant, as defendant and cross-complainant, made a motion for new trial and the court made an order "that said motion for a new trial in the above-entitled action be, and the same is hereby, granted only upon the issues presented on the complaint and the amended answer thereto on the ground of the insufficiency of the evidence to sustain the verdict heretofore rendered in said action; and that said motion, as to the issues presented on the cross-complaint and the answer thereto be and the same is hereby denied. . . ." From this order plaintiff has appealed.

The sole question on the appeal is whether a verdict, had it been for defendant, would have found substantial support in the evidence. The only defense which remained for determination by the jury was that the well was not drilled in a good and workmanlike manner. There was not, as we shall show, any evidence or any permissible inference from the evidence, to sustain this defense. It will appear as we discuss the evidence that the conflicts therein on the material issue, as suggested by the defendant, do not exist and that the evidence was such that had the verdict been for defendant it would have been without support. In such a case an order granting a new trial solely on the ground of insufficiency of the evidence should be reversed. (*De la Falaise* v. *Gaumont-British P. Corp.*, (1940) 39 Cal.App.2d 461, 467-8 [103 P.2d 447] and cases there cited.)

As far as we can determine from the record and from defendant's brief it would appear that a new trial was granted upon an erroneous theory of procedure as to the duty of going forward with the proof. Defendant contends that the new trial was properly granted because plaintiff failed to

prove that the well was drilled in a good and workmanlike manner; that this was a fact necessary to be proved in order to show performance of the contract and that in the absence of such proof there was an insufficiency of evidence to support a verdict for plaintiff.. We address ourselves to these contentions.

██ It was necessary, of course, for plaintiff to allege and, if it was denied, to prove performance of the contract on its part. Section 457 of the Code of Civil Procedure reads as follows: "In pleading the performance of conditions precedent in a contract, it is not necessary to state the facts showing such performance, but it may be stated generally that the party duly performed all the conditions on his part, and if such allegation be controverted, the party pleading must establish, on the trial, the facts showing such performance." Since the contract price was payable on completion of the work, performance was a condition precedent to payment and to be alleged and proved as such. ██ We have seen that there was a general allegation of performance by plaintiff and a denial in general terms that there had been such performance, although there was an express admission that the well was drilled to a depth of 282 feet. If we treat this denial as sufficient, as the trial court did, plaintiff was required under the section to establish on the trial the facts showing such performance. It is clear from the record that plaintiff did show performance on its part. Among the witnesses for plaintiff was the man who drilled the well and whose day by day reports of the operations were placed in evidence. It appeared from his testimony and that of other witnesses that the materials were furnished as agreed and that the usual practices in the drilling of rotary water wells and in the removal of drilling mud by swabbing and sand-pumping were followed. Defendant contends that plaintiff's proof did not go far enough and that it should have shown in detail not only each step taken in the progress of the work but that each such step was taken and each operation of the drilling process was done in a good and workmanlike manner. This contention, which apparently prevailed in the trial court on motion for new trial, is unsupported by any authority cited by counsel or by any rule of law which our investigation has disclosed. We are satisfied that under section 457 of the Code of Civil Procedure plaintiff was not obliged to go any further with its proof than it did go in proving performance. The answer as well as the cross-com-

plaint did not specify particulars in which it was claimed that plaintiff's work was not done in a good and workmanlike manner. We are not questioning that the answer, even though subject to demurrer for uncertainty, was sufficient to put into operation the provisions of section 457 of the Code of Civil Procedure as to the matter of plaintiff's proof, but the allegation certainly left plaintiff and the court completely unadvised as to the contentions of defendant with reference to the question of performance. With the pleadings in that state, plaintiff was not required to anticipate defendant's contentions as to the particulars in which it might be claimed that the work was not done in a good and workmanlike manner. All it had to do was to make out a prima facie case, that is to say, a case sufficient to prove that it furnished the materials and performed the labor and completed the work as agreed. The proof did show this and with sufficient completeness and particularity as to admit of no inference, in the absence of any evidence to the contrary, other than that the work had been done in a good and workmanlike manner.

Defendant makes the error of placing too much reliance upon the stipulation in the contract that the work would be done in a good and workmanlike manner. The error is illustrated by the argument advanced in its support. Under the contract plaintiff was required to furnish, among other things, "all required adapter rings, shoes and landing clamps to properly install above casing," and defendant asks, "Where is there any evidence that this covenant was performed?" Defendant further says, in discussing rotary drilling, "The purpose of the rotary mud circulating under pressure down through the drill stem and up through the hole outside the drill stem is to form a mud casing in the hole as the drilling progresses." Counsel then proceed to propound questions, saying that they could fill page after page with such questions, which only an expert could answer. These questions relate to the consistency of mud which should be used, the speed of rotation of the drill stem, how rapidly the drill stem should be dropped through different formations, how far the mud should be allowed to penetrate the surrounding formation, what pressure should be on the mud pumps, and finally they remark, "Undoubtedly there is a method of preventing excessive quantities of the rotary mud from being forced back into the water-bearing formation so far as to block it off permanently. What are those methods?" The contention is that

plaintiff's proof of performance failed because all such matters were not covered by expert testimony.

The provision in the contract that the work would be done in a good and workmanlike manner did not place the plaintiff under a duty to prove the exact procedure that was followed in each detail of the operations, except as such evidence might be required to meet evidence produced by defendant that the work in certain specific operations failed in specific respects to meet the requirements of good workmanship.

The provision of the agreement that the work would be done in a good and workmanlike manner added nothing to plaintiff's obligations under the contract. Plaintiff corporation was and had been for many years in the business of drilling water wells. Mr. Moss, manager of the company, testified that it drilled from 150 to 200 wells a year and that the company possibly drills more feet of water well hole than any other company in the United States. It uses both the cable tool and rotary methods. Before contracting for the well defendant negotiated with plaintiff's superintendent, who was an experienced driller, thoroughly familiar with the use of rotary equipment. Admittedly plaintiff held itself out as a company skilled, competent and experienced in the drilling of water wells with rotary equipment. There was evidence that the superintendent recommended the drilling of a rotary well, was fairly familiar with local water conditions, and disclosed to defendant his knowledge of the work. Under these circumstances and in view of defendant's reliance upon plaintiff's knowledge and skill, which reliance was shown, plaintiff's undertaking to drill the well carried with it an implied obligation to do the work in a good and workmanlike manner.

A general statement is found in 38 Am. Jur. 662, section 20, reading as follows: "Accompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these conditions is a tort, as well as a breach of the contract." The rule which imposes this duty is of universal application as to all persons who by contract undertake professional or other business engagements requiring the exercise of care, skill and knowledge; the obligation is implied by law and need not be stated in the agreement (see footnotes in 19 Cal.Jur. 544). It is applicable of course to a contract for the drilling of a well. (*Borg*

v. *Downing,* (1936) 221 Wis. 463 [266 N.W. 182, 183].) It is to be borne in mind that defendant did not deny that the well had been drilled but only that the work had been done in a good and workmanlike manner, without specifying any particulars of plaintiff's alleged default. No negligence was alleged, although defendant perhaps could have sued by cross-complaint as for tort based upon alleged negligence. (*Harding* v. *Liberty Hospital Corp.,* (1918) 177 Cal. 520, 524 [171 P. 98].) But whether the theory was breach of contract or negligence, defendant's proof would necessarily proceed along the same lines, namely, to establish the failure to use the care, skill and knowledge necessary to do the job in a good and workmanlike manner.

■ Section 457 of the Code of Civil Procedure, in placing upon a contractor the burden of proving the facts showing performance, where the allegation of performance is controverted, cannot be construed properly as requiring his proof to go so far as to negative any possible claim of breach of warranty.

■ Plaintiff was entitled to recover upon proof of substantial compliance with its contract. (*Bavin & Burch Co.* v. *Bard,* (1927) 81 Cal.App. 722, 727 [255 P. 200].) There was no allegation in the answer that plaintiff had not substantially fulfilled its contract. It might have done that and yet have failed in some minor particular to perform the work in a good and workmanlike manner. However, we have assumed that the denial was sufficient to require plaintiff to prove the facts constituting performance and we shall elaborate somewhat upon what we have already said as to plaintiff's fulfillment of its obligation in the matter of proof.

■ It is not suggested here, nor was it suggested upon the trial, that the materials were not furnished as agreed or that they were not of first-class quality. The well was cased, pumped and tested, and in the absence of other evidence this was sufficient to prove that the materials were furnished as agreed.

■ Where the evidence of performance is so complete, as it was here, that it admits of no inference of a failure to perform according to contract without assuming bad faith, willful breach of duty or negligence on the part of the contractor, such evidence is sufficient to shift to the owner the duty of going forward with his proof to show that the contract has been breached. ■ When it is shown that the work agreed to

be done has been done, whether it be the construction of a building, the making of a road or the digging of a well, so that the thing contracted for stands essentially completed, the contractor is entitled to the benefit of the presumption declared by section 1963 of the Code of Civil Procedure, subdivision 19, that private transactions have been fair and regular. There is a presumption of fact that persons have acted in good faith and there is no presumption, of course, in such a case as this, that the contractor has been negligent. ▮▮▮ There was no duty on the part of plaintiff to negative the alleged poor workmanship which could have resulted only from its bad faith or negligence. It would be a reversal of the customary procedure and wholly illogical to proceed in the trial of issues such as those here involved by requiring the contractor to produce as a part of his case in chief, not only evidence sufficient to make out a prima facie case of performance but also explicit proof as to each bit of material used and each bit of labor done in anticipation of proof that he had breached the contract to do his work in a good and workmanlike manner. He must, of course, prove substantial performance but no inflexible rule can be declared as to the measure of proof required for a prima facie case; too much depends upon the wording of the contract, the nature of the undertaking and the condition of the pleadings; also, due latitude in directing the order of proof must be allowed by the trial court.

While it appears from defendant's brief that he places his main reliance upon the point already discussed, it is suggested rather than argued that there was a conflict in the evidence as to whether plaintiff's work was done in a good and workmanlike manner. We find no such conflict. There was testimony that plaintiff's superintendent McHardie, who was not living at the time of trial, expressed the opinion to defendant that a 2,000-gallon well could be brought in from the sand and gravel encountered above the 282-foot level. On the basis of this testimony it is suggested that the work must have been defective, as Mr. McHardie's prediction was not realized. It is argued further, although without basis in the evidence, that the rotary mud might have been negligently forced into the sand and gravel in such quantities as to shut off the supply of water. All of the evidence on the subject was to the effect that the intrusion of the mud into the formation is relative to the porosity of the formation and that

this is true of oil wells and water wells alike. The supposition upon which defendant relies was directly touched upon but once and that was in the testimony of plaintiff's witness Moss, who, in reply to questions asked him on cross-examination, testified that in his opinion it is not possible for drilling mud to case off a water-bearing structure; that plaintiff's experience leads to the conclusion that where there is any particular quantity of water available in the water-bearing stratum the mud does not shut it off and that in his opinion it would not be possible for the mud to wall off or case off the water if there was any considerable amount of water in the water-bearing strata. . Defendant called as a witness an expert in the drilling of oil wells by the rotary method. He as well as other witnesses testified to the methods usually employed for the removal of drilling mud. There was nothing in his testimony suggesting that the flow of fluid into the hole is interfered with after the mud and sand in the hole are removed by pumping. A comparison of the methods of operation described by this witness as well as by other witnesses with those followed by plaintiff in the drilling and cleaning out of the well sufficiently shows that plaintiff followed the usual methods of rotary drilling.

An effort was made at the trial to cast doubt upon the efficiency of plaintiff's work by proof that other wells drilled in the vicinity, one before and one after the drilling of plaintiff's well, were large wells, the first one of them producing 1,000 gallons a minute from a pumping level of 38 feet, and the other in excess of 2,000 gallons a minute from a depth of 75 feet. The first well, which was drilled in 1921 or 1922, was located about 1,000 feet from the well drilled by plaintiff. There was no evidence as to the depth of that well. The other one was drilled by cable tools immediately after the drilling of plaintiff's well and defendant calls our attention to these facts from which it is suggested that an inference could properly be drawn that plaintiff's work must have been done in a negligent or inefficient manner. But defendant does not direct our attention to the fact that there was no evidence as to the depth of the first well and that the other well, which was called the Longwell well, was shown to have been drilled to a depth of 406 feet. Upon the trial there was much testimony relative to the latter well and the formation through which it had been drilled. An attempt was made to prove by a so-called expert tester of wells that if plaintiff's

well had been properly drilled it would have produced as much water as the Longwell well. We do not believe that this testimony should have been placed before the jury at all. No sufficient foundation was laid for a comparison of the two wells. Defendant's witness testified, after examining the log of the two wells, as follows: "Q. How would you expect the Moss well [drilled by plaintiff] to compare in capacity and in pumping level with the Longwell well? ... A. They should—according to the gravel formations and sand formations on both logs, the wells should be comparable to each other in delivering water at approximately the same depth." He was asked on cross-examination if he had an opinion as to whether the Longwell well, if it had been stopped at 282 feet, would have produced more than 600 gallons per minute and he admitted that he was unable to answer that question. That well was perforated from 138 to 387 feet, and the witness testified that he did not know and had no opinion as to how much of the water developed in the Longwell well came from below a depth of 282 feet. The witness did not undertake to express an opinion and exhibited no knowledge which would qualify him to express an opinion as to how much water might be produced from the sand and gravel shown in the log of plaintiff's well. He went no further than to say that the log showed a "possibility" of water. The well of course did produce something over 600 gallons per minute and the evidence furnishes no reasonable ground for a belief that the water sands and gravels above 282 feet were capable of producing any more water.

Great latitude was allowed defendant in proving the productive capacity of the two other wells. The unanimous verdict in plaintiff's favor conclusively shows that the jury believed (as we do) that the capacity of a well 1,000 feet away from plaintiff's well, of an unknown depth, and the capacity of another well drilled 250 feet away from plaintiff's well and 124 feet deeper, was no proof at all that the failure of the well in question was due to any fault of plaintiff's. Undoubtedly the jury saw, as we see, a convincing inconsistency in defendant's contentions. They may well have asked themselves the question why it was considered necessary to drill a well to a depth of 406 feet with cable tools if a well drilled with cable tools to 282 feet would have produced the 2,000 gallons per minute which defendant sought. The obvious answer was, we think, that the well drilled by plaintiff should

have been located differently or drilled to a greater depth in order to develop any more than 600 or 700 gallons a minute.

Had the jury upon the record now before us returned its verdict in favor of defendant, we should have found it necessary to reverse the judgment for insufficiency of the evidence. It is therefore our duty to reverse the order granting a new trial.

The order granting a new trial is reversed.

Schauer, P. J., and Bishop, J. pro tem., concurred.

Respondent's petition for a hearing by the Supreme Court was denied December 28, 1942. Traynor, J., voted for a hearing.