[Civ. No. 21888. Second Dist., Div. Two. Apr. 16, 1957.]

GENE WILSON, Plaintiff and Appellant, v. JOHN K. KEEFE et al., Defendants and Appellants.

R. Norman Wenzell for Plaintiff and Appellant.

John E. McCall and James C. R. McCall for Defendants and Appellants.

ASHBURN, J.—Plaintiff Wilson sued defendants Keefe[1] to recover for extras performed under a building construction

---

[1] Mrs. Keefe seems to be a nominal party and the husband will be indicated by use of the word ''defendant'' unless otherwise indicated.

contract. Keefe cross-complained for damages due to plaintiff's failure to construct the building entirely upon the lot specified in the contract. Relief was denied both parties and each appeals from the portion of the judgment adverse to him.

## RE PLAINTIFF'S APPEAL

The work was done under a written contract of March 19, 1953, wherein plaintiff Wilson agreed to construct for defendant a residence upon "Lot 34 on Lago Vista Dr., Beverly Hills, Calif." for an agreed sum of $32,200. Paragraph 8 covers the matter of omissions and extras: "Should the Owner at any time during the progress of the work request any modification, alterations or deviations in, additions to, or omissions from, this contract or the plans or specifications, he shall be at liberty to do so, and the same shall in no way affect or make void this contract; but the amount thereof shall be added to or deducted from the amount of the contract price aforesaid, as the case may be, by a fair and reasonable valuation, based upon the actual cost of labor and materials plus 10% profit to the Contractor. . . . The rule of practice to be observed in fulfillment of this paragraph shall be that upon the demand of either the Owner or the Contractor, the character and valuation of any or all changes, omissions or extra work shall be agreed upon and fixed in writing, signed by the Owner and the Contractor, prior to execution. . . . Provided however that the Contractor is not deemed to have waived his right to compensation for extra work if the same is not provided for in writing." The court found upon adequate evidence that plaintiff at defendant's request supplied extra labor and material having reasonable value of $906.82; that neither party ever demanded or requested that the character or value of changes, omissions or extra work should be agreed upon and fixed in writing signed by the parties prior to execution of the work. From this it was concluded that "plaintiff is precluded from recovery of said sum for the reason that paragraph 8 of said building contract was not complied with by the parties in that neither party requested that same be reduced to writing and that same was not so reduced to writing."

■ In this conclusion the court erred. There were omissions amounting to $1,358.94, which were credited to the owner by the contractor without the support of any writing. The extras were done upon the request and with full knowledge of the

owner, but neither party suggested compliance with paragraph 8 of the contract or the necessity of an advance agreement or writing. Such conduct waives compliance with a provision such as paragraph 8. (*Frank T. Hickey, Inc.* v. *Los Angeles Jewish Community Council,* 128 Cal.App.2d 676, 682-683 [276 P.2d 52] ; *Wyman* v. *Hooker,* 2 Cal.App. 36, 41 [83 P. 79] ; *Bavin & Burch Co.* v. *Bard,* 81 Cal.App. 722, 727-728 [255 P. 200] ; *Miller* v. *Brown,* 136 Cal.App.2d 763, 775 [289 P.2d 572] ; 9 Cal.Jur.2d § 13, p. 296 ; 66 A.L.R. 649, 665, 668.) The rule extends even to the rights and obligations of a surety, which are *strictissimi juris* and ''not to be extended by implication beyond the express terms of his contract.'' In *Roberts* v. *Security Trust & Sav. Bank,* 196 Cal. 557, 570 [238 P. 673], it was held that such a departure from the terms of a contract requiring advance written agreement upon extras does not release the surety from his obligation upon the contractor's bond. The instrument under discussion studiously provided for such an eventuality as the doing of extras without a previous writing, for it concludes with these words: ''Provided however that the Contractor is not deemed to have waived his right to compensation for extra work if the same is not provided for in writing.'' The meaning of this is clear beyond the possibility of misinterpretation.

True, the specifications say: ''The owner may order extra work or make changes by altering, adding to or deducting from the work, the contract sum being adjusted accordingly as agreed to by the owner and contractor before the change is commenced.'' It will be noted that this language is merely a partial duplication of the provisions of paragraph 8 of the contract. In view of the specific nature of the concluding language of that paragraph it must be held that the specifications yield to the contract and that the last sentence of paragraph 8 governs the specification as well as the contract itself. (See Am.Jur. § 11, at page 12; *Moreing* v. *Weber,* 3 Cal.App. 14, 20 [84 P. 220] ; *Valley Const. Co.* v. *City of Calistoga,* 72 Cal.App.2d 839, 841 [165 P.2d 521].)

It follows that, upon the evidence now before us, plaintiff is entitled to recover for said extras.

### DEFENDANTS' APPEAL

The contract provides that the dwelling be constructed upon the designated Lot 34. The street is a winding, mountainous road, with no sidewalks, but apparently the curbs had been installed. When completed the house ''did

extend over and upon public property owned by the City of Beverly Hills for a distance of approximately 2 to 3 feet at three points." The quoted finding is immediately followed by this language: "[B]ut that said property was placed in such position according to the plans prepared by cross-complainant [defendant] and his duly authorized agent, and that cross-defendant [plaintiff] is not liable or responsible for said encroachment."

The contract, in addition to providing that the building be constructed on Lot 34, requires that it be completed "in strict conformance with plans and specifications for the same signed by the parties hereto;" also, "in strict compliance with all laws, ordinances, rules and regulations of competent public authority." Paragraph 7 thereof says: "The plans and specifications are intended to supplement each other, so that any works exhibited in either and not mentioned in the other are to be executed the same as if they were mentioned and set forth in both."

The agreement makes no mention of an architect or of any superintendence of the work. This is also true of the specifications. They were prepared by one Colleen Crist, who is trained in draftsmanship but not licensed as an architect. The fact that she had no license was known to the contracting parties and plays no part in the solution of this case. The specifications provide: "The owner shall supply all information as to lot lines, deed restrictions, property line agreements [sic], easements, or any other right effecting [sic] this building. The drawings were completed with the information supplied, and changes resulting from misinformation shall be paid for on a fair and reasonable basis." Neither of said documents (contract or specifications) mentions Miss Crist or purports to confer any authority on her, except that the specifications do say: "The building is to be framed, braced, spiked and pinned in a sound manner and to be true and plumb. Consult with Miss Crist in regard to any framing which involves construction different from that indicated on various details or which is not detailed in the drawings."

 The court having found with plaintiff on this phase of the case, all testimony and all inferences favorable to respondent must be accepted in this court. (*Nichols* v. *Mitchell*, 32 Cal.2d 598, 600 [197 P.2d 550].) We proceed upon that basis.

 Defendant says he furnished to plaintiff all plans, contour maps and surveyor's maps which he had received when he purchased the lot; this the plaintiff denies, saying he was

furnished no lot lines whatever. It is a reasonable inference that such surveys as defendant had were furnished to Miss Crist, rather than plaintiff, for the specifications prepared by her state, as above quoted, that the "drawings were completed with the information supplied," obviously referring to that which the owner was to furnish as to lot lines and the like.

Both parties testified that detailed plans and changes therein were worked out by plaintiff Wilson and Miss Crist during the progress of construction; Wilson says there were some 40 such changes. Having received no survey or other information concerning lot lines, plaintiff called on Miss Crist for information as to any setback requirement of the city, and she told him there was none. This inquiry was made of her because "she was doing his [defendant's] work," which was being done "under her supervision," according to plaintiff's testimony. No motion to strike either of these conclusions was made. Miss Crist showed plaintiff upon the plans[2] "a line around the front end of the premises," but, same not being designated thereon as the curb line, he called upon her for the information and she said it was the curb, and Wilson accepted it as such. No lot line was ever staked out on the ground, but on one occasion plaintiff and defendant were at the premises and, according to defendant, Mr. Wilson "stretched some strings around the lot and claimed he could build the house on the lot; and he showed me these strings which looked to me all right. It represented building lines." When completed, the corner of the house was about three feet inside the curb line. No one ever told plaintiff that there was a city-owned strip of five feet between curb and property line and, as above pointed out, Miss Crist had advised him that there was no setback requirement, no setback from the curb.

The arrangement between the owner and Miss Crist is not in evidence; it does not appear whether the same was oral or written; Miss Crist was not called as a witness. Her conduct was such, and known to defendant to be such, that it raised a fair inference of agency, express or implied, actual or ostensible, with respect to the matters above discussed and continuing throughout the construction period. We cannot say that the evidence does not warrant the finding that the building "was placed in such position according to the plans pre-

---

[2]The plans themselves seem to have been before the trial court, but they were never formally received in evidence and are not among the exhibits transmitted to this court.

pared by cross-complainant [defendant] and his duly authorized agent, and that cross-defendant [plaintiff] is not liable or responsible for said encroachment.''

The portion of the judgment which denies plaintiff recovery on his first amended complaint is reversed; the portion which denies defendants recovery upon their amended cross-complaint is affirmed.

Moore, P. J., and Fox, J., concurred.