Troy HODGES, d/b/a Soldotna Air
Service, et al., Appellants,

v.

Curtis J. MOCK et al., Appellees.

PIPER AIRCRAFT CORPORATION,
Cross-Appellant,

v.

Curtis J. MOCK et al., Cross-Appellees.

Nos. 1564, 1574.

Supreme Court of Alaska.

Oct. 17, 1972.

D. A. Burr and Roger F. Holmes, of Burr, Pease & Kurtz, Anchorage, for appellants Troy Hodges.

William H. Fuld, of Kay, Miller, Libbey, Kelly, Christie & Fuld, Charles Tulin, Anchorage, and William G. Richards, of Robinson, McCaskey, Strachan, Hoge, Richard & Frankel, Anchorage, for appellees, Curtis J. Mock, and others.

David H. Thorsness, Hughes, Thorsness, Lowe, Gantz & Clark, Anchorage, for Piper Aircraft Corp.

John M. Conway, Atkinson, Conway, Young & Bell, Anchorage, for appellees, Borg-Warner Corp. and Avco Corp.

Before RABINOWITZ, CONNOR and BOOCHEVER, JJ.

## OPINION

RABINOWITZ, Justice.

This appeal centers on the issue of whether the trial court committed an abuse of discretion in limiting the testimony of an expert witness who had been called by appellants Hodges and Van Doren. In the particular factual context of this record we hold that the trial court did not err.

The events that gave rise to this litigation occurred on July 1, 1968. On that date Guy Van Doren, a pilot in the employ of Hodges, d/b/a Soldotna Air Service, was to fly six commercial passengers from Anchorage to Kenai. The flight terminated in the trees six miles northeast of the Kenai airport, injuring all six appellees. The plane was a Cherokee Six built by Piper Aircraft, with an engine manufactured by the Lycoming Division of Avco Corporation which included a carburetor manufactured by the Marvel-Schebler Division of Borg-Warner.

The six passengers filed suit, on July 10, 1968, against Van Doren and his employer alleging various counts of negligence. Almost one year later the passengers filed an amended complaint that additionally alleged a claim for relief against Piper Aircraft Corporation grounded on express and implied warranties. In particular the complaint asserted that Piper was liable because the Cherokee Six's ". . . carburetor was of defective design and manufacture and was unsafe and inherently dangerous for its intended use and was subject to failure." In April of 1970 Piper filed a third-party complaint against Avco and Borg-Warner seeking indemnity for any damages that might be awarded against Piper. Just prior to trial the parties were realigned, making the several manufacturers all defendants; under this realignment Piper was given a crossclaim against Avco and Borg-Warner.

The jury returned a verdict against Hodges and Van Doren on April 2, 1971, in the form of answers to special interrogatories. More particularly, the jury found:

1. . . . that the failure of pilot Guy Van Doren to have required instrument proficiency check on July 1, 1968 caused or directly contributed to the crash . . . .

. . . . . .

3. . . . that the alleged deviation by [the pilot] from the recognized instrument flight rules caused or directly contributed to the crash. . . .

4. . . . that the failure of [the pilot] to "clear" his engine while descending with reduced power caused or directly contributed to the crash . . . .

5. . . . that the failure of [the pilot] to receive a weather briefing prior to departure from Anchorage caused or directly contributed to the crash . . . .

6. . . . that the failure of [the pilot] to apply carburetor heat en route from Anchorage to Kenai prior to commencing his descent caused or directly contributed to the subsequent power failure and crash . . . .

. . . . . .

8. . . . that the sole proximate cause of the aircraft engine failure and crash in this case was the negligence of the pilot . . . and, accordingly, find only against the defendants Hodges and Van Doren.

9. . . . that one cause of the engine failure was the negligence of the pilot . . . and accordingly, find against Van Doren and Hodges.[1]

After motions for new trial were denied, Hodges and Van Doren appealed and Piper cross-appealed.

In this appeal Hodges and Van Doren assert that the trial court erred in limiting the proferred testimony of their expert Holladay. More specifically they claim that Holladay should have been allowed to testify as to the absence of pilot error and the inadequacies of the air induction system of the Cherokee Six's engine. Piper's cross-appeal deals essentially with the claim that the trial court's award of attorney's fees to it was inadequate.

We think the trial court's limitation of Holladay's testimony was not an abuse of discretion in the circumstances of this record. The numerous parties engaged in extensive discovery because of the technical nature of the issues. Hence the costly and time-consuming pre-trial proceedings were highly significant to the parties' trial preparation. In Miller v. Harpster, 392 P. 2d 21, 23 (Alaska 1964), we said that:

The broad policy of all of our rules permitting discovery is to eliminate surprise at the trial and to make it convenient for the parties to find and preserve all available evidence concerning the facts in issue, thereby encouraging the settlement or expeditious trial of litigation.

Regarding the pre-trial conferences, the purposes of such proceedings is clear from the governing rule, Civil Rule 16(a), which provides in pertinent part:

In any action a pre-trial conference . . . may be ordered . . . to consider the following:

(1) The simplification of the issues.

(2) The necessity or desirability of amendments to the pleadings.

(3) The possibility of obtaining admissions of fact and . . . [avoiding] unnecessary proof.

(4) The limitation of the number of expert witnesses.

.    .    .    .    .    .

(6) Such other matters as may aid in the disposition of the action.

Subsection (e) of Rule 16 further provides in part:

The judge shall make an order (to be drawn and submitted by counsel) which shall recite the action taken at the conference, the amendments allowed to the pleadings, and the agreements made by the parties as to any of the matters considered, and which limits the issues for trial to those not disposed of by admissions or agreements of counsel. . . . The order when entered shall control the subsequent course of the action unless modified by the judge to prevent manifest injustice. . . .

Three pre-trial conferences were held to define the direction and scope of trial. The December 3, 1969, pre-trial order stated in part that all of the passengers except one claimed that Piper had furnished a defective carburetor and that this defective carburetor failed to function properly causing the Cherokee Six's engine to

---

1. Van Doren had filed an Instrument Flight Plan in Anchorage although apparently the ceiling in Kenai was below the FAA minimum permitted for instrument approaches to Kenai. Moreover, he was not legally able to make instrument flights because he had not had the 6-month proficiency check required by the FAA. As to his approach, Van Doren admitted his plan to come straight in did not conform to the regulations. The investigation immediately after the crash revealed that the plane lacked the necessary equipment for a straight approach. It also showed that the radio and V.O.R. navigations equipment were not tuned to the proper frequency for Kenai; they had not been checked prior to flight as required by the FAA. The evidence as to whether Van Doren applied carburetor heat was conflicting. But he admitted not clearing his engine of any possible carburetor ice during his descent to the anticipated landing.

**1358**

malfunction.[2] The order further provided:

> The parties will, prior to . . . June 3, 1970, furnish other counsel and file with the court lists of witnesses proposed to be called. . . . If any . . . are to be expert witnesses, the subject of their expert testimony shall be briefly described. . . . [I]t is contemplated that at the time of the pre-trial conference of June 3, 1970, an order will be entered permitting parties to supplement their witness lists up and until a later date, shortly before trial.

Hodges and Van Doren submitted their list of witnesses as ordered, June 3, 1970, but it did not include any expert on carburetor defects. The supplemental pre-trial order of November 17, 1970, set a new deadline for filing witness lists of January 15, 1971, with a provision for supplementation "for good cause shown." The court's final pre-trial order was entered March 16, 1971, the day before the trial commenced. In part this order limited the passengers' claim against Piper to one based on the allegations of a defective carburetor.[3] The supplemental witness list which was filed by Hodges and Van Doren on March 17, 1971, added Holladay. This document stated that Holladay " . . . will testify in an expert capacity on the Marvel-Schebler carburetor of the type and model installed on the Cherokee Six Piper aircraft involved in the instant litigation."

During the trial both Piper and Avco and Borg-Warner moved for protective orders. Avco and Borg-Warner asked that Hodges and Van Doren be precluded from calling Holladay to testify in an expert capacity. They asserted that good cause had

not been shown for the late listing of Holladay and that new issues had been injected in the testimony Holladay had given in his deposition.[4] More specifically Avco and Borg-Warner contended that Holladay's proferred testimony

> . . . raises. for the first time numerous issues and contentions with respect to both the carburetor and the entire air induction system, which will require . . . [Avco and Borg-Warner] to conduct extensive additional discovery with respect to Mr. Holladay's theories and his own background and prior work in the areas in which he testified, as well as the production of additional witnesses.

Piper moved that Holladay be excluded from testifying and in the alternative that Holladay's testimony "be limited to carburetion problems allegedly created by the carburetor as found after the crash without reference to other component parts of the aircraft, their design features, or otherwise." When Holladay was called by Hodges and Van Doren as a rebuttal witness the trial court precluded the witness from testifying both as to the aircraft's air induction system and as to pilot error.

■ Concerning the scope of an expert witness' testimony, it is well established that the pre-trial order governs the issues to be tried at trial. Civil Rule 16(e); Golden Valley Electric Association v. College Enterprises, Inc., 455 P.2d 215 (Alaska 1969); United Bonding Insurance Company v. Castle, 444 P.2d 454 (Alaska 1968); Lumbermens Mutual Casualty Company v. Continental Casualty Company, 387 P.2d 104 (Alaska 1963). Further, we have expressed a strong sentiment against hidden issues and defenses.[5] Hol-

---

2. The same pre-trial order also referred to the passengers' contentions as to pilot error. The December 3, 1969, pre-trial order concentrated on expediting discovery by compelling the exchange of certain evidence.

3. The main objective of the March 16, 1971, pre-trial order was to explain the realignment of the parties which made the manu-

facturers defendants instead of third party defendants.

4. Holladay's deposition was taken at the same time the trial was being held.

5. Lumbermens Mut. Cas. Co. v. Continental Cas. Co., 387 P.2d 104 (Alaska 1963). In Ferrell v. Baxter, 484 P.2d 250, 268 (Alaska 1971), we said that before trial the trial court is empowered to limit the

laday's proferred testimony on the subjects of the aircraft's air induction system and pilot error exceeded that disclosed in the March 17, 1971, supplemental witness list, and thus was not allowable under the several pre-trial orders entered in the case at bar. Testimony concerning the air induction system, to the extent it is separable from the carburetor, would have been beyond the scope of the pleadings and pre-trial; thus Piper, Avco, and Borg-Warner had no notice that these issues might arise at trial. Moreover, given the complexity of explaining and evaluating such matters, and the special knowledge of each system which was required, we think it would have been unfair to require them to defend against a claim of a different mechanical defect at the last minute. In reaching this conclusion we essentially approve the trial court's stated rationale for limiting Holladay's testimony. In explaining his decision the trial judge said in part:

> The court in granting a protective order sought at the outset of the trial and then in limiting Mr. Holladay's—the scope of his testimony during the trial recognized that this was a case that was developed factually in preparation on the rather technical and restricted grounds of what inherent defect in that aircraft may have produced the crash, and the discovery that was conducted prior to trial was limited to the carburetor body. The court in its ruling was not so much con-

cerned with the language of the pleadings as with the fairness of permitting a party at the very beginning of trial to come forward with a new theory of causation that would require that either the matter be continued and that it was an expensive trial for all the parties to have become involved in and be on hand to present their witnesses. And I considered it unfair to require that the parties be required to put off the day of trial for a rather extended period as would have had to be done based upon this new evidence, and therefore rather than basing my ruling on the language of the pleading I based it upon the sense of the discovery as it had been developed.

Given the character of this litigation, the length of time the case was at issue prior to the commencement of trial, the manner in which the issues were framed and pre-trial discovery conducted, and the purposes of pre-trial discovery (i. e. elimination of surprise, disclosure of issues, conservation of judicial energies) we cannot conclude that the trial court in the case at bar abused its discretion in limiting Holladay's testimony.[6] See Crawford v. Rogers, 406 P.2d 189 (Alaska 1965).[7]

This leaves for consideration Piper's contention advanced in its cross appeal that the attorney's fee awarded its attorneys was inadequate given the complexity of this litigation and the extent of their participation in it.[8] It appears that the

---

number of expert witnesses, citing Bertram v. Harris, 423 P.2d 909, 916 (Alaska 1967); Fairbanks Publishing Co. v. Francisco, 390 P.2d 784, 799 (Alaska 1964); Civ.R. 16(a)(4). The trial court may require the parties to reveal the underlying legal theories of their claims for relief or defenses (Century Refining Co. v. Hall, 316 F.2d 15 (10th Cir. 1963)); Frankel v. Todd, 260 F.Supp. 772 (E.D. Pa.1966), rev'd on other grounds, 393 F.2d 435 (3rd Cir. 1968) and has the authority to preclude a party from introducing evidence on a claim or defense that is not revealed. *See generally* Wiggins v. City of Philadelphia, 331 F.2d 521 (3rd Cir. 1964).

6. For similar reasons we hold that the trial court's limitation of Holloday's testimony

regarding the subject matter of pilot error was not erroneous. Such testimony would have exceeded the scope of his intended testimony as reflected in the March 17, 1971, supplemental witness lists. Further we note that Holladay's testimony did reflect on pilot error, directly and indirectly, although he did not testify at great length on the subject.

7. Our resolution of the Holladay issue has made it unnecessary for us to decide the cross-claim issue raised in the cross appeal.

8. Piper also points to the fact that the trial court awarded Avco and Borg-Warner $12,000 in attorney's fees while only awarding Piper $4,000 in attorney's fees.

trial court decided to grant Avco and Borg-Warner more in attorney's fees than Piper because it believed that Avco and Borg-Warner were the real focus of the passengers' defective product claims for relief from the outset and that the significant burden of the defense of this claim fell upon counsel for Avco and Borg-Warner.[9] Our precedents establish that the amount to be awarded as attorneys fees to a prevailing party is committed to the sound discretion of the trial court and that on review we are limited to the "question of whether the court exceeded the bounds of the broad discretion vested in it." Preferred General Agency of Alaska, Inc. v. Raffetto, 391 P.2d 951, 954 (Alaska 1964).[10] In the case at bar we have concluded that the trial court did not abuse its discretion in making the award of attorney's fees it did to Piper.

Affirmed.

BONEY, C. J., and ERWIN, J., not participating.

9. In this regard the court said:
Well, I still take the view that even though Marvel-Schebler did not become the really primary defendant in this action until the time of trial that it was being looked to as the source of the recovery if one were here throughout the proceedings from the time it was brought into the action. And that the burden of the defense of the action really fell upon Marvel-Schebler at the trial as to the product aspect of the case. And that even had there been recovery against Piper for sale of a defective product that Piper would have immediately have in turn looked to Marvel-Schebler for indemnification of that amount.

10. See also Moore v. Moore, 499 P.2d 300 (Alaska 1972); Owen Jones & Sons, Inc. v. C. R. Lewis Co., Inc. 497 P.2d 312 (Alaska 1972); McDonough v. Lee, 420 P.2d 459 (Alaska 1966).