**SKAGWAY CITY SCHOOL BOARD et al.,**
**Appellants,**

v.

**J. W. DAVIS a/k/a James W. Davis,**
**Appellee.**

**No. 2265.**

Supreme Court of Alaska.

Dec. 8, 1975.

W. G. Ruddy and M. T. Thomas, Robertson, Monagle, Eastaugh & Bradley, Juneau, for appellants.

Peter M. Page and Gail Roy Fraties, Gregg, Fraties, Petersen & Page, Juneau, for appellee.

Randall J. Weddle, Faulkner, Banfield, Doogan & Holmes, Juneau, for amicus curiae, Association of Alaska School Boards.

Before RABINOWITZ, Chief Justice, and CONNOR, ERWIN and BURKE, Justices.

## OPINION

CONNOR, Justice.

J. W. Davis was employed by the Skagway City School Board as superintendent of the Skagway schools in 1969. The employment agreement contemplated a three-year term, with Davis to receive a fixed salary for the 1969–70 school year and the compensation for the subsequent two school years to be negotiated. Davis signed a standard teacher's contract form, but whether the employment agreement was oral or written was a matter of dispute.

Differences arose between Davis and at least some members of the school board over his performance as a school administrator during the second year of his employment. The record discloses a letter dated February 4, 1971, from the board to Davis detailing certain charges against him. By letter dated February 25, 1971, the board requested Davis' resignation, to be effective upon completion of the 1970–71 school year. Upon his refusal to resign, the board informed Davis by letter that it did not intend to renew his contract for 1971–72.

Davis persisted in his refusal to resign and requested a hearing. The board provided a list of charges against him, a hearing was held in Skagway on May 29, 1971, and the board, following the hearing, voted unanimously against his retention as superintendent.

Davis then filed a civil action against appellants claiming breach of contract. At

trial, considerable evidence was adduced regarding Davis' competence as an administrator, with the district's teachers lining up on both sides of the question. Past and present board members testified against Davis, and one past board member testified on his behalf. There was testimony from various members of the community, and Davis testified extensively on his own behalf.

Mr. Robert Van Houte, the executive director of NEA–Alaska, a teachers' professional organization, testified as an expert for the plaintiff. He stated generally that Davis' discharge would prevent his obtaining future employment as a school administrator and also gave testimony in regard to the economic impact of the discharge upon the earning capacity of Davis.

At the close of the trial, the jury returned a verdict in favor of Davis, awarding him $23,100 for salary loss for 1971–72, and $95,800 for damages to future earning capacity. This appeal followed.

### I.

Appellants claim error in the giving of Jury Instruction No. 6, which states:

I instruct you that, in order to warrant recovery, the plaintiff has the burden of proving every element necessary to constitute the contract of service and his wrongful discharge. That is to say, the employee must submit evidence that he had a contract; that he was performing it; that he was ready, willing and able to complete the contract but was precluded from doing so by premature (wrongful) cancellation of his contract. In this case, it is conceded that the plaintiff has a three-year contract and that he was discharged after two years. On the other hand the defendant has the burden of proving by a preponderance of the evidence justification for the discharge. The law will not assume that an employee has been derelict in his duty from the fact that he has been discharged; and when such an employee is

a school superintendent claiming damages for a wrongful discharge, the burden rests upon the employer to prove substantial non-compliance with the school laws of the state, the regulations or bylaws of the state department of education, or the bylaws of the district, that is, the Skagway Board policy manual. Whether defendants have met that burden is for you, alone, to decide.

The first phase of appellants' argument is that this case should not have been treated as an action at law for breach of contract but as one for review of the board's decision to terminate Davis as superintendent. Much of appellants' argument concerns whether Davis was a tenured teacher. Appellants urge that Davis was not a tenured teacher and that he could be dismissed after notice and hearing if the quality of his work was unsatisfactory to the board.[1] From this it is argued that the court's inquiry should have been limited to determining whether substantial evidence supported the board's action. Alternatively it is argued that if the tenure statutes apply to Davis the contract entered into with Davis was insufficient to confer tenure status. Appellants urge that under the applicable statute and regulations the contract was defective.[2]

We find it unnecessary to dwell at length upon whether the tenure statutes applied to Davis.[3] The answer filed in this case admits an oral contract to employ Davis for a three-year term. It was for breach of this contract that Davis sought damages. No authority has been cited by appellants, and we know of none, which would require Davis to further exhaust any administrative remedies as a prerequisite to bringing a breach of contract action. Davis properly sought his remedy at law, and appellants joined issue with him. In our opinion the case was treated properly as one for breach of contract.

Appellants next claim error on the ground that Instruction No. 6 was confused in its treatment of the burden of proof. They assert that the instruction was erroneous in respect to both the quantum of proof required and the elements to be proved. They also assert that the instruction improperly allocated the ultimate burden of persuasion. They argue, first, that while Instruction No. 6 stated the burden which must be met by the plaintiff in a common law contract action, it improperly described the board's burden in terms of the teachers' tenure laws. Appellants also seem to imply that it was error to combine the preponderance of the evidence standard used in Instruction No. 6 with standards derived from the tenure statutes. It was erroneous, state appellants, for the instruction to say that the burden rests upon the employer to prove

"substantial non-compliance with the school laws of the state, the regulations or bylaws of the state department of education, or the bylaws of the district, that is, the Skagway Board policy manual."

It is true that this language is similar to that portion of the teacher tenure statute which defines one of the grounds for dis-

---

1. In *Nichols v. Eckert*, 504 P.2d 1359 (Alaska 1973), we held that non-tenured teachers have a right to notice and hearing prior to a dismissal for cause during the school term.

2. AS 14.20.130 provides for issuance of employee contracts in accordance with regulations of the Department of Education. 4 AAC 18.010(11) requires that all teacher and administrator contracts shall meet certain conditions, including the following:

"[C]ontract to be made in duplicate and signed by at least two members of the school board and the teacher. . . . "

In *Spicer v. Anchorage Independent School District*, 410 P.2d 995, 997 (Alaska 1966), we stated by way of dictum that if these requirements are not met no contract exists.

3. We note, without deciding, that a sound argument can be made that school superintendents, and Davis in particular, do not come within the tenure laws. *See Biehn v. Tess*, 340 Ill.App. 140, 91 N.E.2d 160, 164 (1950) ; *Canfield v. Board of Education of Borough of Pine Hill*, 51 N.J. 400, 241 A.2d 233 (1968) ; AS 14.20.150(a)(2) ; AS 14.-20.207(1), (2).

**222**

missal of tenured teachers.[4]  But it does not appear to us that the teacher tenure provision was the source of the language in the instruction.

The duties of a superintendent are defined by law, regulations and school board bylaws.  AS 14.14.130 authorizes the employment of a chief school administrator by the school board, prescribes certain duties, and requires the chief administrator to operate the school district in accordance with the school board's bylaws.  AS 14.14.-100 authorizes and requires school boards to prescribe written bylaws as expressions of school district policy.  Various regulations contained in Title 4 of the Alaska Administrative Code fix requirements for the administrative operation of school districts, and 4 AAC 15.030 requires school districts with more than seven teachers to employ a superintendent who is to have "full administrative control of a school district." [5]  The *Manual for Alaska School Boards,* which prescribes the duties of school superintendents, is incorporated into the regulations by 4 AAC 06.090.

These provisions became a part of the contract for appellee's employment under the general rule that applicable laws in existence at the time of the formulation of the contract and which the parties are presumed to know are incorporated into the contract and become a part of it as though they had been expressly set out in the contract.[6]  These statutes, regulations and bylaws collectively set out the duties of appellee as superintendent and thus prescribed what constituted performance of the contract on his part.  Thus the contested instruction is adequate in its description of the contractual terms to be proved.

We now turn to appellants' assertion that Instruction No. 6 improperly distributed the burden of proof between the parties.  They claim that they should only have had to bear the burden of going forward with the evidence to show justification for the discharge based on any reasonable cause.  We disagree.  Under accepted common law principles applicable to employment contract cases where the plaintiff-employee alleges wrongful discharge, we find no error in the trial court's giving of Instruction No. 6.  In so deciding, we follow a number of cases which hold that the defendant-employer in a wrongful discharge case has the ultimate burden of proving justification for the discharge. *Moore v. Missouri Pacific R.R.,* 264 F.2d 754, 757 (5th Cir. 1959) ; *Martin v. Southern Ry.,* 240 S.C. 460, 126 S.E.2d 365, 370 (1962) ; *Davies v. Mansbach,* 338 S.W.2d 210, 212 (Ky.1960) ; *Hansen v. Columbia Breweries, Inc.,* 12 Wash.2d 554, 122 P.2d 489, 492 (1942) ; *see generally,* Annot., 49 A.L.R. 472, 488 (1926).

In allocating the burden to appellants on this issue, we are in accord with the general evidentiary rule applicable in civil cases whereby the defendant has the burden of persuasion in establishing those facts which he is required to affirmatively plead.  C. McCormick, *Evidence* § 318, at 673 (1954).  An employee's rendition of substantial performance of his promised service is generally a constructive condition precedent to the employer's duty to pay wages, 3A A. Corbin, *Contracts* § 675, at 208 (1960), and as such, a plaintiff-employee is required to plead generally to the substantial performance of his contractual duties in a wrongful discharge case.[7]  In-

---

4.  AS 14.20.170(a)(3).

5.  4 AAC 15.030(d).

6.  *Swenson v. File,* 3 Cal.3d 389, 475 P.2d 852, 854, 90 Cal.Rptr. 580 (1970) ; *Fischler v. Nicklin,* 51 Wash.2d 518, 319 P.2d 1098, 1100 (1958) ; *Alpha Beta Food Markets v. Retail Clerks Union Local 770,* 45 Cal.2d 764, 291 P.2d 433, 437 (Cal.1955), *cert. denied,*

350 U.S. 996, 76 S.Ct. 547, 100 L.Ed. 861, (1956) ; 17 Am.Jur.2d *Contracts* § 374, at 817 (1964).

7.  Alaska Civil Rule 9(c) provides that in pleading the performance of conditions precedent, it is sufficient to plead generally that all conditions precedent have been performed or have occurred.

struction No. 6 so provides. However, with regard to denials of the performance or occurrence of conditions precedent, Alaska Civil Rule 9(c) provides that they must be pleaded specifically and with particularity, rather than by mere general denial.[8] While the burden of persuasion does not always follow the burden of pleading, we believe that in this case it was proper to place the burden on appellants to prove

> "substantial non-compliance with the school laws of the state, the regulations or bylaws of the state department of education, or the bylaws of the district, that is, the Skagway Board policy manual." *See* Jury Instruction No. 6, *supra.*

In *Roscoe Moss Co. v. Jenkins,* 55 Cal. App.2d 369, 130 P.2d 477, 482 (1942),[9] where a plaintiff pleaded and proved his own performance generally and the defendant pleaded and sought to prove that the performance was insubstantial and insufficient, proof of the latter, more particular, allegation was deemed to be the defendant's and not the plaintiff's burden. That is essentially what happened at bar. Davis pleaded, and evidently proved to the jury's satisfaction, his own performance of the agreement. Appellants affirmatively pleaded that Davis was incompetent and was in "substantial non-compliance with the school laws of the State, the regulations of the State Board of Education, and the policy regulations for the Skagway City School District promulgated by the Skagway School Board," alleging that the same represented a failure of consideration.[10] Evidently they did not prove to the jury's satisfaction their justification for Davis' discharge.

The court's instructions to the jury amply defined the burdens upon each party. Instruction No. 5 provided:

> "In the instant case, plaintiff has alleged breach of contract by the defendant. By its terms, the contract in question provides that plaintiff must act as Superintendent of the Skagway School System, which duty is given definition by the School Board Policy Manual. Should you find by preponderance of the evidence that plaintiff substantially performed his duty to act as School Board Superintendent under the contract, then you must find for the plaintiff. Alternatively, if you do not find by preponderance of the evidence that plaintiff substantially performed his duties as superintendent, then you must find for the defendant.

> You are advised that substantial compliance exists where there has been no omission in essential points and the contract has been honestly and faithfully performed in its material and substantial particulars."

The court then further charged the jury regarding the defendant's burden:

> ". . . On the other hand, the defendant has the burden of proving by a preponderance of the evidence justification for the discharge. The law will not assume that an employee has been derelict in his duty from the fact that he has been discharged; and when such an employee is a school superintendent claiming damages for a wrongful discharge, the burden rests upon the employer to prove substantial non-compliance with the school laws of the state, the regula-

---

8. *Accord, Reynolds-Fitzgerald, Inc. v. Journal Publ. Co.,* 15 F.R.D. 403 (S.D.N.Y.1954).

9. This case is actually distinguishable from the case at bar, since it does not involve an employment contract for a term of years. However, it stands for the same proposition on the issues of pleading and proof.

10. Appellants' characterization of their defense as an affirmative defense of failure of consideration is •mistaken. Where the issue is the performance of conditions precedent, specific and particular denial is required by Civil Rule 9(c). However, the mistaken characterization will not be fatal to a party's case, provided its allegations are sufficiently specific and particularized.

tions or bylaws of the state department of education, or the bylaws of the district, that is, the Skagway School Board Policy Manual." *See* Jury Instruction No. 6, *supra*.

■ The reference to laws, regulations and bylaws, does not appear to have confused appellants' burden with the provisions of the tenure statutes. Rather, it appears to represent a definition of the appellee's duties under the contract, a recognition which takes full cognizance of appellants' own extensive definition of the superintendent's duties, as found in the Board's own bylaws. Having pleaded appellee's non-compliance with the terms of the contract, appellants cannot seriously object to proving it by the usual quantum of proof required in contract cases, after plaintiff has been first required to meet his burden of proof. There was no error in giving Instruction No. 6.

## II.

■ Appellants claim that the jury's verdict on damages was not supported by the evidence. We consider in this section of the opinion only the amount awarded by the jury for loss of Davis' third year of employment as the superintendent at Skagway.[11]

The jury awarded $23,100 for this element of the damages. Appellants assert that Davis did not mitigate damages by making a diligent endeavor to obtain alternative employment. Even if mitigation occurred, appellants claim that the damages should not exceed $21,780.

The salary for the third year of employment was open to negotiation. Even if Davis had been retained for the third year, appellants argue that the board, in view of its dissatisfaction with Davis' performance, would have paid only the minimum amount necessary under its pay schedule, which is the sum of $22,800. From this there should have been deducted $1,020, representing the amount he earned during the ensuing year as a part-time teacher at Sitka, leaving a maximum award of $21,780.

Our review of the record reveals that there was substantial evidence that Davis was unable to mitigate his damages by more than the $1,020 he earned at Sitka.[12] Moreover, he incurred expenses of about $575 in moving his family and household goods from Skagway to Sitka. There was evidence from which the jury could conclude that Davis' salary for the third year, had he been retained, would have been $23,600, for that was the amount that he was paid during his second year of employment. If $1,020 is subtracted from that amount, and if $575 in moving expenses is added, the result is $23,155. That the jury rounded this to $23,100 is not unreasonable. We hold that this portion of the damage award is supported by the evidence.[13]

## III.

We now take up the question of whether Davis can recover damages for injury to his reputation and for decreased future earning capacity resulting from the breach of contract by the board.

Under the instructions the jury was permitted to compensate Davis for such loss.[14] For this item of damage the jury awarded

---

11. The rest of the damage award is dealt with in the succeeding portion of this opinion.

12. There was testimony which would support a concluusion that alternative, better paying employment was available, but the jury resolved this question in favor of Davis, under appropriate instructions.

13. *See United Bonding Insurance Company v. Castle*, 444 P.2d 454 (Alaska 1968); *Ahl-*

*strom v. Cummings*, 388 P.2d 261 (Alaska 1964).

14. Instruction No. 7 stated in pertinent part: "It is further proper for you to consider, if you find for the plaintiff, the impact, if any, on his future capacity to earn a living. The suspension or discharge of a school superintendent prior to the expiration of his contract could cause economic hardship, create a stigma of incompetence or blemish

$95,800. Appellants and amicus curiae assert that such damages cannot be awarded as a matter of law.

A preliminary observation is in order. The recovery in this case could not be based upon a theory of tort liability. The record does not contain evidence of malice, or of any attempt by the school board to defame Davis. On the record there appears to be no communication by the board to third persons about Davis' performance as superintendent. The board's criticisms were published only in the course of a closed hearing held at the request of Davis. In these circumstances the actions of the board fall within at least a qualified privilege, which immunizes the board from tort liability.[15] On appeal Davis himself characterizes his recovery as consequential damages flowing from the breach of his employment contract. We are, therefore, presented with the question of whether consequential damages for injury to reputation and for impairment of future earning ability can be recovered for breach of an employment contract.

█ The normal rule is that a wrongfully discharged employee is entitled to the total amount of the agreed upon salary for the unexpired term of his employment, less what he could earn by making diligent efforts to obtain similar employment. 5 A. Corbin, *Contracts* § 1095 (1964). Beyond this the employee is not permitted recovery for injury to his reputation. The case law is firmly supportive of this rule. *Westwa-*

*ter v. Rector Of Grace Church,* 140 Cal. 339, 73 P. 1055 (1903); *Mastoras v. Chicago, M. & St. P. Ry. Co.,* 217 F. 153 (W.D. Wash.1914); *Volkswagen Interamericana S.A. v. Rohlsen,* 360 F.2d 437 (1st Cir. 1966), *cert. denied,* 385 U.S. 919, 87 S.Ct. 230, 17 L.Ed.2d 143 (1966); *Tousley v. Atlantic City Ambassador Hotel Corp.,* 25 N.J.Misc. 88, 50 A.2d 472 (1947); *Smith v. Beloit Corp.,* 40 Wis.2d 550, 162 N.W.2d 585 (1968); Annot., 22 A.L.R.3d 1047, 1072 (1968).

█ The primary reasons underlying the rule are that (1) the computation of damages for injury to reputation is unduly speculative, and (2) such damage cannot reasonably be presumed to have been within the contemplation of the parties when they entered into the contract.

The attempt to calculate damages for injury to reputation, stemming from wrongful dismissal, is indeed fraught with many difficulties. The estimate must rest upon a number of imprecise variables such as the causal connection between the dismissal and injury to reputation, the likelihood that the employee's reputation would have persisted for the remainder of his working life, and the amount by which his future earnings will be decreased because of the dismissal, as opposed to other causes.

However, it is not the difficulty of determining the amount of damage which alone justifies the limitations of the rule. The rule must also be viewed as an expression of a broader principle which sets the

---

a professional reputation, thus decreasing the possibility of other educational employment opportunities. While the plaintiff in this case is entitled to nothing if you find that his termination was proper for substantial non-compliance, on the other hand should you find that he is entitled to recover, then you may and should compensate him for such loss of future earning capacity as you may find that he is reasonably certain to suffer under the evidence. However, in order to compensate plaintiff for such loss, you must find that his wrongful discharge by the City of Skagway was the cause of plaintiff's loss of future earnings.

Whether he will or will not suffer such a loss of future earning capacity is, of course, for you to determine.

15. In *Redman v. Department of Education,* 519 P.2d 760, 771 (Alaska 1971) we were presented with a somewhat similar situation where a teacher claimed damages for defamation following her alleged wrongful discharge. We held, however, in that case that plaintiff's failure to argue certain points caused her to abandon her defamation claim on appeal. See generally Annot., 40 A.L.R. 3d 490, 494 (1971).

# 226

outer boundaries of permissible contract damages. We are referring to the venerable doctrine first laid down in *Hadley v. Baxendale,* 9 Ex. 341, 156 Eng.Rep. 145 (1854). There the court stated:

"Where two parties have made a contract which one of them has broken, the damages which the other party ought to receive in respect of such breach of contract should be such as may fairly and reasonably be considered either arising naturally; i. e., according to the usual course of things, from such breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties at the time they made the contract as the probable result of the breach." Quoted from 5 A. Corbin *Contracts* § 1007, at 70, n. 1.5 (1964).

In *Hadley v. Baxendale* the plaintiff was the operator of a flour mill. The mill was disabled by a broken engine shaft. Plaintiff delivered the shaft to the defendant, operating as a common carrier, for delivery to a firm which would make a new shaft, using the broken one as a model. The shaft was sent by canal boat rather than by rail, resulting in prolonged delay in reopening the flour mill. The question on appeal was whether plaintiff could recover damages in the form of lost profits because of the unnecessary stoppage of the mill. In holding against the plaintiff the court announced the rule quoted above. The decision turned in large part upon the fact that the plaintiff had not communicated to the defendant carrier that the mill was shut down and that it would continue to be shut down while the shaft was in transit. Thus the defendant had no notice of the special circumstances which would lead to plaintiff's damage.

The principle of *Hadley v. Baxendale* underwent some refinement at the hands of Mr. Justice Holmes. In *Globe Refining Co. v. Landa Cotton Oil Co.,* 190 U.S. 540, 23 S.Ct. 754, 47 L.Ed. 1171 (1930), he stated:

"When a man makes a contract, he incurs, by force of the law, a liability to damages, unless a certain promised event comes to pass. But, unlike the case of torts, as the contract is by mutual consent, the parties themselves, expressly or by implication, fix the rule by which the damages are to be measured. . . . The extent of liability . . . should be worked out on terms which it fairly may be presumed [the defendant] would have assented to if they had been presented to his mind." 190 U.S. at 543, 23 S.Ct. at 755.

Under this approach mere knowledge of possible harm flowing from a breach would not be sufficient to impose liability. As Justice Holmes stated quoting Willes, J.:

"The knowledge must be brought home to the party sought to be charged, under such circumstances that he must know that the person he contracts with reasonably believes that he accepts the contract with the special condition attached to it." [16]

The doctrines expounded in these and other cases stand for a principle of moder-

16. *Globe Refining Co. v. Landa Cotton Oil Co.,* 190 U.S. 540, 545, 23 S.Ct. 754, 756, 47 L.Ed. 1171 (1930); *see also* O. W. Holmes, The Common Law 301–02 (1881). In both of these Holmes cites to *British Columbia & Vancouver Island Spar, Lumber & Saw-Mill Co. v. Nettleship,* L.R. 3 C.P. 499, 500 (1868). While Justice Willes used substantially similar language in that case, his exact words were slightly different:
"I think that an extraordinary loss suffered by one of two contracting parties ought not to be borne by the other unless the former has given some consideration for the greater risk . . . . Mere knowledge on the part of the carrier of the use to which the article is to be put cannot, per se, increase his liability; there must have been knowledge under such circumstances as would raise the presumption that he intended to make himself liable for the special consequences, and that the person contracting with him believed, and had reasonable grounds for believing, that he intended to undertake such liability, and unless there was a special payment it would be very difficult to get a jury to come to such a conclusion." [1861–73] All E.R. Reprint 339, 341–42 (1868).

ation in the award of contract damages. The *Hadley* rule has the advantage of making those damages highly predictable, and at the same time limited in amount.[17] The endurance of the rule can be explained in part in terms of economic utility. It is thought that by rendering contract damages more readily predictable, persons are encouraged to enter into various transactions with less apprehension than would be true if damages for breach of contract were allowed for relatively remote forms of injury.

Davis relies on *Nichols v. Eckert*, 504 P.2d 1359 (Alaska 1973), in support of his recovery. There we held that non-tenured teachers were entitled to notice and hearing, as basic elements of procedural due process, prior to a mid-term termination of their employment. In so doing we noted that such a dismissal can have an adverse effect on a teacher's professional reputation. But we did not intimate any view as to the measure of damages for wrongful discharge, as that question was not before us.

*Cooley v. Board of Education of Forrest City School District*, 453 F.2d 282 (8th Cir. 1972), is also relied upon by Davis, but it is distinguishable in numerous respects. There a teacher was dismissed in mid-term without notice or hearing, apparently for extra-curricular civil rights activities in the community in which he taught. In ordering his reinstatement the court held that the teacher would be entitled to the damages incurred from the date of his discharge to the date of his reinstatement, subject to the normal rules of mitigation. Nothing in the court's opinion even touches upon the type of damages claimed by Davis in the case before us.

In his treatise on damages, Professor McCormick noted the possibility that courts might eventually recognize a right to expanded compensation for breach of an employment contract.[18] But we are aware of no cases in which this has been accomplished,[19] and we know of no test or measure which would confine such damages to anything less than those which would be awarded in tort.

Whatever doubts have been cast upon the efficacy of the *Hadley* rule as applied to mass transactions and large scale modern enterprise,[20] we believe that the rule should have continued vitality in cases such as the one at bar. It is particularly apt for entities which enter into a relatively small number of contracts and which may not be presumed to be very sophisticated about the law of contracts or the liability stemming from a breach. An employer, such as the school board here, can in debatable cases decide to terminate a school superintendent and incur only a maximum liability certain in amount. Both parties can then get on with their respective tasks of finding new employment and a new person to fill the vacant position. This is a better result than subjecting the employer to a contingent, uncertain,

---

17. *See* Danzig, "Hadley v. Baxendale: A Study in the Industrialization of the Law," 4 J. Legal Studies 249, 277 (1975). This article provides valuable and illuminating insight into some of the historical forces and conditions influencing the formulation of the *Hadley* rule, and poses questions about how it ought to function in the modern world.

18. C. McCormick, *Damages* § 163, at 638 (1935).

19. There is a line of contract cases which has awarded damages for loss of reputation as a result of wrongful discharge. In these actions, actors who had entered into contracts to play at well-known establishments were held to have in part contracted for the purpose of obtaining publicity and increasing their reputation. *See e. g., Withers v. General Theatre Corp.*, [1933] 2 K.B. 536. These cases, however, are entirely different from the one at bar; the actors had bargained for the benefit of an opportunity to increase their reputation as part of the consideration for their agreement. The cases do not stand for any expanded award of damages where an increase in reputation is not part of the consideration for the contract.

20. Danzig, *supra* note 15, at 280–283.

and largely speculative liability as a possible penalty for erroneously discharging an employee.

We conclude, therefore, that the award of $95,800 cannot stand. We affirm in part, reverse in part, and remand for the entry of a judgment in conformity with this opinion.[21]

Affirmed in part, reversed in part.

BOOCHEVER, Justice, not participating.

21. In view of our disposition of the case we do not reach the question of whether the court erred in excluding certain evidence proffered by appellants which went to Davis' previous reputation as a school administrator. Nor is it necessary to decide whether the evidence was sufficient to support the damage award of $95,800.