Wayne L. MITCHELL, Appellant and Cross-Appellee,

v.

Marlin D. SMITH, Appellee and Cross-Appellant.

Nos. S–1727, S–1758.

Supreme Court of Alaska.

Sept. 4, 1987.

Dennis E. Cook, Schaible, Staley, DeLisio & Cook, Inc., Fairbanks, for appellant/cross-appellee.

Kenneth D. Lougee, Hughes, Thorsness, Gantz, Powell & Brundin, Fairbanks, for appellee/cross-appellant.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

This appeal and cross-appeal are from the granting of Wayne L. Mitchell's (Mitchell) motion for summary judgment and Marlin D. Smith's (Smith) motion for partial summary judgment respectively. At issue is whether Mitchell had a valid lien for wages and wage penalties due him and whether Smith, Mitchell's attorney, negligently failed to foreclose Mitchell's liens. Also presented are questions of costs and attorney's fees. We affirm the trial court's granting of summary judgment for Mitchell and partial summary judgment for Smith. However, we reverse and remand on the issue of costs and attorney's fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Mitchell was hired by Robert Massey to work for Massey and/or Heather Farms, Inc., presumably owned by Massey. Their relationship ended on an unhappy note: Mitchell did not get paid all that was due him when secured creditors foreclosed on Heather Farms.

Mitchell sued Smith, asserting two claims. The following facts were alleged in Count I: On May 4, 1982, Mitchell recorded in the recorder's office in Fairbanks a notice of claim of lien for wages for labor performed at Massey's request at Heather Farms; Mitchell's lien constituted a first lien under AS 34.35.435, upon products produced by or equipment used on the lands of Heather Farms; Mitchell's lien also constituted a mechanic's or materialman's lien against real property under AS 34.35.060; in May 1982 Mitchell engaged Smith as his attorney to foreclose his lien; Smith filed a complaint and obtained a judgment against Heather Farms, but negligently failed to plead the suit as a lien foreclosure, the

result being that Mitchell was left with a judgment lien rather than a first priority lien against Heather Farms' real or personal property; Mitchell's lien expired and, due to Smith's failure to foreclose, Alaska Commercial Fishing and Agricultural Bank and the Agricultural Revolving Loan Fund (ARLF) each foreclosed upon Heather Farms and applied the proceeds of the sale to their loans; the State of Alaska refused to recognize Mitchell's lien because Smith did not properly plead Mitchell's case as a lien foreclosure. Mitchell claimed to be damaged by Smith's malpractice in the sum of about $10,510.00, ostensibly the sum of Mitchell's unpaid wages ($2,210.00) and the penalty he believed he was entitled to under AS 23.05.140(d) (approximately $8,300.00). Count II of Mitchell's complaint pled in general terms that in March 1984, Smith attempted to collect the judgment he had obtained for Mitchell by execution against a tractor owned by Heather Farms and that Mitchell who was at the time an employee of ARLF, a competitor for this asset, lost his employment with ARLF as a result of Smith's execution efforts.

Mitchell moved for summary judgment on Count I (Count II was dismissed by stipulation). He argued that under the provisions of various lien statutes, his lien for wages would have been actionable as a priority lien for a period of six months. A suit for foreclosure had to be filed within that period in order to perfect the lien. He further argued that his lien was perfectable through the time of the judgment Smith obtained and that, at the time the judgment was entered, Heather Farms had assets sufficient to satisfy the lien. Therefore, but for Smith's negligent failure to plead foreclosure of his lien, Mitchell would have recovered $10,510.00.

Smith opposed the motion on several grounds, essentially attacking the validity of Mitchell's liens. Smith also moved for partial summary judgment arguing that even if a lien was validly created, the undisputed evidence showed that Mitchell's lien interest was limited to $2,210.00 and that Mitchell would not have been entitled to a

lien, priority or otherwise, upon the penalty portion of his claim.

The trial court granted Mitchell's motion for summary judgment on the issues of Smith's negligence and proximate cause. The trial court then granted Smith's motion for partial summary judgment on the issue of the amount of the liens. Mitchell moved for reconsideration, which was denied. The trial court thereafter awarded Smith attorney's fees of $3,500.00 and costs of $348.65.

This appeal and cross-appeal ensued.

## II. DISCUSSION

### A. INCLUSION OF PENALTY AGAINST MITCHELL'S EMPLOYER UNDER AS 23.05.140(b) AND (d) IN MITCHELL'S MECHANIC'S AND WAGE LIENS.

Mitchell argues that the trial court, after finding in his favor on the issue of Smith's negligence and proximate cause, improperly granted summary judgment for Smith on the issue of the amount of his lien entitlement. He argues that the trial court erroneously excluded from his recovery the amount to which he was statutorily entitled as a penalty against his employer, Heather Farms. Our lien statutes must be examined in some detail in order to fully understand his argument.

#### 1. Mechanic's Lien Statutes.

AS 34.35.050 provides in part:
*Lien for labor or materials furnished.* A person has a lien, only to the extent provided under this chapter, to secure the payment of the *contract price* if the person
(1) performs labor upon real property at the request of the owner or the agent of the owner for the construction, alteration, or repair of a building or improvement; ...
(Emphasis added).

The term "contract price" is defined as follows:
"contract price" means the *amount agreed upon by the contracting parties* for furnishing services, labor, materials or equipment covered by the contract, increased or diminished by the price of change orders, extras, or amounts attributable to altered specifications; if no price is agreed upon by the contracting parties, "contract price" means the *reasonable value of all services, labor, materials, or equipment covered by the contract;* ...
AS 34.35.120(5) (emphasis added).

AS 34.35.095 reads in part as follows:
*Amount of Lien.* (a) Except as provided in (c) of this section, a claimant may recover upon a lien recorded by the claimant *only the amount due to the claimant according to the terms of the contract,* after deducting all claims of other persons claiming through the claimant for work done and materials furnished.

. . . .

(c) An individual described in AS 34.-35.120(10) may recover upon a lien recorded by the individual only the amount due *according to the terms of the employment.*
(Emphasis added).

AS 34.35.120(10) defines "individual" as follows:
"individual" means a natural person who actually performs labor upon a building or other improvement as an employee of the owner or any contractor furnishing labor, materials, services, or equipment for the construction, alteration or repair of a building or other improvement; ...

#### 2. Wage Lien Statutes.

AS 23.05.140(b) provides:
(b) If the [employee's] employment is terminated, regardless of the cause of termination, all wages, salaries or other compensation for labor or services become due immediately and shall be paid within three working days after the termination....

AS 23.05.140(d) provides:
(d) If an employer violates (b) of this section by failing to pay within three working days of termination, the employer may be required to pay the employee a

penalty in the amount of the employee's regular wage, salary or other compensation from the time of demand to the time of payment, or for 90 working days, whichever is the lesser amount.

AS 34.35.435 provides that an employee may file a lien "in order to secure the payment of the amount due or owing under the contract or agreement ..." and that this is a priority lien.

3. Mitchell's Liens.

The following facts are undisputed. Mitchell worked as the manager of Heather Farms, a corporation operating a farm tract on Tract "U" of the Delta Junction Agricultural Project, Delta Junction, Alaska. His duties included supervision of the construction of a building located on the tract. Mitchell's employment terminated February 10, 1982. He received all wages to which he was entitled through November 15, 1981. The balance of wages due him for the November 1981—February 1982 period was $2,210.00. The labor penalty against his employer for failure to pay wages under AS 23.05.140(d), computed for Mitchell by the Wage and Hour Division of the State of Alaska, was $8,300.00.

Based on these facts, Mitchell was entitled to file both a mechanic's lien and a wage lien under the appropriate statutes, which he did. Under AS 34.35.050, Mitchell was entitled to a lien in the amount of the "contract price" as defined at AS 34.35.120(5). Under AS 34.35.095, Mitchell was entitled to a lien in the amount due him "according to the terms of the employment" because he met the definition of "individual" as set forth in AS 34.35.120(10).

■ Mitchell argues that the labor penalty may be included in the lien amount because the labor penalty provision, by virtue of its existence as an applicable law at the time of the formulation of the employment contract, constitutes a term of that contract. As such, it meets the requirement of AS 34.35.050, which provides that a person has a lien to secure payment for the "contract price," and AS 34.35.095(c), which provides that an individual may recover

upon a recorded lien the amount due according to the "terms of the employment." We are not persuaded, however, that "contract price" in AS 34.35.120(5), or the amount due "according to the terms of the employment" in AS 34.35.095(c), was intended by the legislature to include the statutory penalty provided by AS 23.05.140(d).

A penalty is "a punishment fixed by law...." Webster's New World Dictionary, 1050 (2nd. College Ed. 1972). The penalty provided at AS 23.05.140(d) is obviously intended to deter employers from withholding wages due their employees. AS 34.35.120(5) clearly defines the term "contract price." The plain language of that definition suggests that the wage penalty provision was not incorporated into it, since it specifies what constitutes "contract price," *i.e.*, the amount agreed upon or, if none, the reasonable value of specified items. The wage penalty provision is not a component of the reasonable value of services, labor, materials or equipment furnished. It was not agreed upon. Furthermore, there is no evidence that the wage penalty was intended by the parties as a "term of employment" as contemplated by AS 34.35.095(c).

To further support his argument, Mitchell directs us to the case of *Skagway City School Board v. Davis*, 543 P.2d 218 (Alaska 1975), *disapproved on other grounds, Native Alaskan Reclamation and Pest Control, Inc. v. United Bank Alaska*, 685 P.2d 1211, 1219 (Alaska 1984). In *Skagway*, a school board discharged its superintendent of schools and the superintendent brought an action against the board for breach of a three-year employment contract. The jury found for the superintendent and the board appealed on several grounds. *Id.* at 220. The board contested, *inter alia*, a jury instruction which required the board to prove

substantial non-compliance with the school laws of the state, the regulations or bylaws of the state department of education, or the bylaws of the district, that is, the Skagway Board policy manual.

*Id.* at 221. The board claimed error in that its burden in this instruction was stated in terms of the teacher's tenure laws, and the superintendent was not tenured. In that case, we concluded that the jury instruction was proper because the duties of a school superintendent are defined by provisions of law, regulations and school board bylaws. *Id.* at 222. We held that:

> These provisions became a part of the contract for appellee's employment under the general rule that applicable laws in existence at the time of the formulation of the contract and which the parties are presumed to know are incorporated into the contract and become a part of it as though they had been expressly set out in the contract. These statutes, regulations and bylaws collectively set out the duties of appellee as superintendent and thus prescribed what constituted performance of the contract on his part.

*Id.* (footnote omitted).

Mitchell argues that the above quoted language requires the conclusion that because the former AS 23.05.140(d) constitutes a "term of the employment," (*see* AS 34.35.095), and/or a part of the "contract price" (*see* AS 34.35.050), he may recover the labor penalty prescribed in the statute. We find Mitchell's interpretation of this isolated language from *Skagway* to be unpersuasive. *Skagway* is entirely distinguishable from the case before us. Mitchell has not presented a breach of employment contact claim. There is no issue of duty on his part or on the part of his employer or Smith which might require determination from relevant statutes.

Furthermore, even if such a question were presented, the labor penalty is not in itself a prescribed duty such as an employer must perform in order to discharge his/her duties under an employment agreement. It is rather a penalty for the failure of an employer to discharge his duty under AS 23.05.140(b) to pay wages within the set statutory period.

We reach the same conclusion with regard to our wage lien statutes. There is no basis for claiming that the penalty provision of AS 23.05.140(d) was intended to expand the amount of a lien established under AS 34.35.435, that being "the amount due or owing under the contract or agreement." Our wage lien statutes only provide for the creation of a lien for wages, salaries and other compensation for labor or services earned pursuant to a contract or agreement.

Since we conclude that the wage penalty provision does not create lien rights under our mechanic's or wage lien statutes, we do not reach the issue of whether such a lien would have priority over other interests.

We affirm the judgment of the trial court granting Smith's motion for summary judgment limiting Mitchell's recovery to the amount of his wages.

## B. SMITH'S CROSS–APPEAL.

Smith's cross-appeal raises several issues. We discuss only those which are relevant in light of our disposition of the previous issue, and which have not been waived by Smith's failure to raise them in the trial court. *See Zeman v. Lufthansa German Airlines*, 699 P.2d 1274, 1280 (Alaska 1985).

First, Smith contends that there are questions of fact which preclude entry of summary judgment against him. Smith maintains that there are factual disputes as to 1) whether Mitchell timely filed his liens; 2) whether Mitchell complied with the statutory requirement of timely notifying Heather Farms that wages were due him; and 3) whether there existed sufficient statutorily defined assets to satisfy a lien had those assets been foreclosed upon. Second, Smith contends that the trial court erred in failing to give him credit for the $2,500.00 which he collected on the judgment for wages from Heather Farms. Finally, Smith contends that there was no expert testimony introduced showing that he committed malpractice. We address these arguments in turn.

### 1. Factual Questions.

#### (a) Timely Filing of Lien.

■ AS 34.35.440(b) provides that a wage lien must be filed within ninety days

after termination of the performance of services. Mitchell introduced admissible evidence that his lien was filed on May 4, 1982 and that he was employed by Heather Farms through February 10, 1982. Once Mitchell produced this evidence, the burden shifted to Smith to submit admissible evidence controverting Mitchell's version of the facts. *See Ratcliff v. Security National Bank,* 670 P.2d 1139, 1142 & n. 6 (Alaska 1983). Smith did not controvert this evidence and therefore failed to meet his burden. Summary judgment was properly granted.

**(b) Accounting of Wages Requirement.**

■ AS 34.35.440(a) requires in part that when an employer fails to make wage payments to an employee, the employee must present an account of the amount due him within thirty days after the indebtedness accrues in order to fix a wage lien.

The record reflects that Mitchell's employment was terminated on February 10, 1982, and that he provided his employer with duplicate accounts of service showing the amount of wages due him in December of 1981, in January of 1982 and on March 1, 1982. This evidence also was uncontroverted by Smith. Thus, Smith did not meet his burden on this issue either and therefore summary judgment was properly granted.

**(c) Existence of Sufficient Assets to Satisfy Wage Lien.**

■ AS 34.35.435 provides that an employee has a wage lien:

upon all products, machinery, tools, fixtures, appurtenances, goods, wares, merchandise, chattels, wagons, carts, or things of value, of whatsoever character, that are created in whole or in part by the labor or that may be used or useful by the person or may be necessarily connected with the performance of the labor or service, which may be owned by the employer, or an agent, receiver, or trustee of the employer.

The statutory language is clear that virtually any asset connected with the performance of the employee's labor is susceptible to a wage lien. In this instance, Mitchell produced admissible evidence that he had managed the farm and worked on the construction of a building at the farm, both as a superintendent of the project and as a laborer. This evidence also was not controverted by Smith. Based on these facts, it is obvious that at least the equipment used by Mitchell and the building constructed for Heather Farms were susceptible to a lien. Therefore, the trial court properly granted summary judgment on this issue as well.

**2. Credit for Corrected Judgment.**

Smith contends that the trial court erred in failing to credit him with $2,500.00 which he collected from Mitchell's employer, Robert Massey, on the judgment for wages. This issue is without merit. A complaint filed by Mitchell apparently contained a separate claim against Massey for breach of the six-year employment contract. Mitchell argued, and the trial court justifiably concluded, that the $2,500.00 paid Mitchell by Massey was in settlement of this claim. Smith presented no evidence to the contrary. The trial court correctly refused to credit this amount.

**3. Evidence of Malpractice.**

■ Smith's final contention is that since there was no expert testimony that his conduct constituted legal malpractice, he cannot be found liable. We find no merit in this. The uncontroverted facts show that Mitchell engaged Smith as his attorney to foreclose Mitchell's lien upon the products produced by or equipment used at Heather Farms. AS 34.35.440(g) requires that a wage lien be foreclosed in order to be a priority lien under AS 34.35.435. The complaint filed by Smith makes no mention of Mitchell's lien and the judgment obtained therefore did not secure him a priority lien for his wages.

We concluded in the preceding discussion that Mitchell properly and timely filed his lien and that Heather Farms possessed sufficient statutorily defined assets at the time Mitchell's judgment was entered to have satisfied the lien amount had his lien been properly foreclosed upon. We con-

clude that this undisputed evidence gives rise to an inference of negligence on Smith's part, and no expert testimony was required to establish that his conduct constituted malpractice.

### C. ATTORNEY'S FEES.

During the course of this litigation, Count II of Mitchell's complaint was dismissed. Also, Smith filed two offers of judgment. The first, dated December 11, 1985, was in the amount of $4,000.00. The second, dated January 30, 1986, was in the amount of $7,500.00.

The trial court found that Smith was the prevailing party in the overall context of this litigation and that Mitchell, therefore, was not entitled to any amount of attorney's fees. The trial court awarded Smith $3,500.00 in attorney's fees and $348.65 in actual costs under Civil Rule 68.[1]

Mitchell contends that the trial court erred in awarding costs and attorney's fees to Smith where 1) Mitchell was the prevailing party; 2) it was improper under Civil Rule 68 because Mitchell's judgment exceeded the first offer of judgment made by Smith; 3) the trial court failed to justify the specific award; and 4) the award is unreasonable and unjust.

We first address Mitchell's contention that he was the prevailing party. We have held that:

> The determination of which party is the prevailing party is vested, in the first instance, in the trial judge's discretion and is reviewable on appeal only for abuse. Determination of who the prevailing party is does not automatically follow if the party receives an affirmative recovery, but rather is grounded on which party prevails on the main issues.

*Continental Insurance Co. v. United States Fidelity & Guaranty Co.*, 552 P.2d 1122, 1125 (Alaska 1976) (footnotes omitted), *disapproved on other grounds, Farnsworth v. Steiner*, 638 P.2d 181, 184 n. 5 (Alaska 1981); *see also Hutchins v.*

*Schwartz*, 724 P.2d 1194, 1204 (Alaska 1986).

The trial court in this case stated that under the offer of judgment rule, Civil Rule 68, defendant is entitled to an award of costs and attorney's fees incurred after the offer was made. These costs and fees are substantial in relationship to the overall costs and attorney's fees incurred by defendant. The court therefore determines that in the overall context of this litigation, defendant is the prevailing party and plaintiff is not entitled to an award of attorney's fees.

The trial court failed to identify any permissible factors it considered in concluding that Smith was the prevailing party. To the extent it concluded that Smith prevailed because much of his attorney's fees were incurred after the offer of judgment was made, the trial court considered an impermissible factor. While consideration of this factor is relevant in determining the amount of attorney's fees awarded under Rule 68, it is irrelevant to the determination of which party prevailed in this action. Since we cannot determine the basis for the trial court's conclusion that Smith was the prevailing party, this issue must be remanded for further consideration. In light of our disposition on this issue, we do not consider Mitchell's other arguments.

### III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the trial court granting summary judgment for Mitchell and partial summary judgment for Smith, and we REVERSE and REMAND the issue of costs and attorney's fees for redetermination.

---

1. Alaska Civil Rule 68 provides in pertinent part:
   > If the judgment finally obtained by the offeree is not more favorable than the offer, the offer-

ee must pay the costs incurred after the making of the offer.